2019 PA Super 273

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PIERRE CLEMAT | : | |
| | : | |
| Appellant | : | No. 1966 MDA 2018 |

Appeal from the Judgment of Sentence Entered October 22, 2018
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0002687-2017

BEFORE:   GANTMAN, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED SEPTEMBER 04, 2019**

Appellant, Pierre Clemat, appeals from the judgment of sentence entered by the Honorable Michael J. Barrasse in the Court of Common Pleas of Lackawanna County following Appellant's conviction by a jury on the charges of possession with the intent to deliver a controlled substance ("PWID") and possession of drug paraphernalia.[1]  After a careful review, we affirm.

The relevant facts and procedural history have been set forth, in part, by the trial court as follows:

> [Appellant's] charges stemmed from a November 15, 2017[,] incident wherein Lackawanna County and Dunmore Police Detectives were investigating a prostitution ring.  Specifically, the Detectives found an escort on the internet and arranged to meet

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and (32), respectively.

with her for an appointment in Room number 416 at the Four Points Sheraton Hotel in Scranton. The escort, eventually identified as Derrian Regan (hereinafter "Regan"), agreed to a rate of $160.00 per half hour of services with the Detectives via text message. Upon arriving at the Four Points Sheraton Hotel, Regan accepted $160.00 in exchange for a sexual act, and officers immediately placed Regan under arrest. While being transported, officers observed Regan notify an unknown male of her arrest. Subsequently, officers observed the male, later identified as Appellant, walk towards the hotel and throw a plastic bag into a nearby shrub. Thereafter, the officers recovered multiple, individual twist bags containing heroin inside the plastic bag discarded by Appellant. Immediately, the officers Mirandized and placed Appellant into custody. After a custodial search of Appellant, officers recovered two (2) Apple IPhones and $1,460 of U.S. currency. Officers transported Appellant and Regan to the Dunmore Police Station. During questioning, Regan admitted that she dates Appellant and he provides her [with] heroin.

Accordingly, on July 10, 2018, a jury trial commenced wherein the Commonwealth presented several witnesses. Forensic Scientist Jennifer J. Libus, a lab technician with the Pennsylvania State Police Wyoming Regional Laboratory, testified that she tested the contents of the individual baggies and determined that the baggies contained fifty-four (54) grams of Fentanyl. Ms. Libus testified that she has been qualified as an expert in the field of drug identification and analysis in the Commonwealth of Pennsylvania, and has rendered her opinion in criminal cases over 150 times.

Additionally, Dunmore Police Detective Corey Condrad, a Supervisor of the Drug Unit, testified that he observed Appellant dispose of a plastic baggie containing Fentanyl into the bushes of the hotel parking lot. He also testified to the recovery of $1,460 in U.S. currency and two (2) cell phones found on Appellant. Detective Condrad further testified that the suspected narcotics were packaged into evidence and transported to the Pennsylvania State Police Wyoming Crime Lab.

Similarly, Detectives Vince Butkiewicz and Thomas Davis of the Lackawanna County District Attorney's Office corroborated Appellant's discarding of the plastic bag, the search of Appellant, and recovery of the suspected narcotics. Furthermore, Detective Harold Zech of the Lackawanna County District Attorney's Office testified as an expert regarding factors that show an intent to deliver as well as tools utilized by dealers within the drug trade.

In this case, Detective Zech opined that the quantity of Fentanyl recovered demonstrated Appellant possessed the Fentanyl with the intent to deliver rather than possess for personal use. He further testified that typical factors of possession with intent to deliver include large amounts of cash and multiple cellular phones. He noted that officers recovered both items on Appellant's person.

Upon conclusion of all testimony, and all evidence presented, the jury convicted [Appellant] of one (1) count of Possession of a Controlled Substance with Intent to Deliver (50 to 100 grams of Fentanyl) and one (1) count of Possession of Drug Paraphernalia. [The trial] court requested a pre-sentence investigation report, and upon thorough review as well as consideration of the sentencing guidelines, including all mitigating and aggravating factors, [the trial] court sentenced [Appellant] on October 22, 2018[,] [to 84 months to 168 months in prison, plus five years of probation, for PWID, and six months to twelve months in prison for possession of drug paraphernalia.]

[The trial] court imposed consecutive sentences which aggregated to ninety (90) to one hundred and eighty (180) months of incarceration followed by five (5) years of probation supervised by the Pennsylvania Board of Probation and Parole.

On November 1, 2018, Appellant filed a Motion for Reconsideration of Sentence, alleging that this Court imposed an excessive sentence and erroneously relied upon factors contemplated by the guidelines. [The trial] court denied Appellant's Motion on November 13, 2018, and [Appellant] filed a timely Notice of Appeal…on November 29, 2018.

Trial Court Opinion, filed 5/6/19, at 2-5 (citations to record omitted).

The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant timely complied, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant sets forth the following issues in his "Statement of the Questions Involved" (verbatim):

1) Whether the trial court erred when it did not strike Juror number 20 for cause, as she was likely biased due to a recent drug-related overdose of a very good friend?

2) Whether the trial court erred when it allowed Lackawanna County District Attorney Detective Harold Zech to testify as an expert witness:

   a. despite the fact the Commonwealth did not timely and properly disclose their intent to call Detective Zech as an Expert Witness; and

   b. despite the fact the Commonwealth had full knowledge it planned to call Detective Zech as an expert witness but failed to disclose the fact (including subject matter) until the Friday before Trial?

3) Whether the trial court erred when it allowed Detective Zech to improperly testify as an expert since the matter to which Detective Zech testified did not require a person qualified in a specific science, art, or trade?

4) Whether the trial court erred when it allowed Detective Zech to testify as an expert witness despite the fact that Detective Zech was personally and directly involved in the arrest of Appellant?

5) Whether the trial court erred when it allowed Detective Zech to testify beyond the scope of his expert report, as no report was produced?

6) Whether the trial court erred when it allowed Detective Zech to answer questions specifically related to the case, posed as thinly veiled "hypothetical" questions, which covered subject matter reserved for the jury (notwithstanding the fact that Detective Zech was testifying as an expert witness)?

7) Whether the Judge abused his discretion in sentencing Appellant to the aggravated range by impermissibly relying on factors already considered in the sentencing guidelines, specifically the weight and nature of the substance, essentially multiplying those factors against Appellant twice[?]

Appellant's Brief at 3-4.[2]

---

[2] We note Appellant presented all of these issues in his Rule 1925(a) statement.

In his first issue, Appellant contends the trial court erred when it failed to strike Juror number 20 for cause. Specifically, Appellant contends that, since Juror number 20 admitted that her "very good friend" died from a drug-related overdose just two weeks prior to Appellant's trial, the trial court should have presumed the likelihood that she was prejudiced, and consequently, the trial court should have granted Appellant's request that she be stricken for cause.

In developing his claim, Appellant points to the following excerpt from *voir dire*:

> [DEFENSE COUNSEL]: So, I just have a few additional questions. Again, this case involved possession with intent to deliver a controlled substance. Now, has anyone here had a loved one that died as a result of addiction or substance abuse?
>
> ***
>
> And your number is, ma'am?
>
> JUROR 20: 20.
>
> [DEFENSE COUNSEL]: Can you explain the circumstances?
>
> JUROR 20: A very good friend of ours just passed away two weeks ago.
>
> [DEFENSE COUNSEL]: Very recent.
>
> JUROR 20: Yes.
>
> [DEFENSE COUNSEL]: Would that fact prevent you from being a fair and impartial juror?
>
> JUROR 20: No.
>
> ***
>
> [DEFENSE COUNSEL]: Is there any other additional factors that any one of you feel that would lead you to not be a fair and impartial juror in this matter? No? Okay, let the [record] reflect that the answer is in the negative. Thank you. That's all I have.

N.T., 7/10/18, at 12-14, 16.

> A trial court's decision regarding whether to disqualify a juror for cause is within its sound discretion and will not be reversed in the absence of a palpable abuse of discretion. ***Commonwealth v. Stevens***, 559 Pa. 171, 197, 739 A.2d 507, 521 (1999). In determining if a motion to strike a prospective juror for cause was properly denied our Court is guided by the following precepts:

>> The test for determining whether a prospective juror should be disqualified is whether he [or she] is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor....It must be determined whether any biases or prejudices can be put aside on proper instruction of the court....A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions.

***Commonwealth v. Briggs***, 608 Pa. 430, 12 A.3d 291, 332-33 (2011) (some

quotations omitted).

Here, in explaining the reasons it denied Appellant's request that Juror

number 20 be stricken for cause, the trial court indicated the following:

> [J]uror number twenty (20) stated during jury selection that her friend recently succumbed to a drug overdose. However, she assured [the trial] court that she remained a fair and impartial juror. Because of the juror's demeanor and unequivocal response, as well as the juror's lack of fixed opinion, obvious bias, or relationship to any of the parties, victims, or witnesses, [the trial] court did not disqualify the juror. Juror 20 did not visibly manifest distress nor did she express substantial doubt. In fact, [the trial] court recognized that the underlying case did not involve an overdose or overdose victim so as to trigger a close situational relationship to the juror. ***See Commonwealth v. Johnson***, 445

- 6 -

A.2d 509, 514 (Pa.Super. 1982) (finding that prospective juror's close relationship to a victim of a separate crime did not compel a finding of prejudice in every case). Furthermore, cognizant of the protections provided by peremptory challenge, Appellant had the opportunity to strike [J]uror number 20 if so inclined, and Appellant chose to retain [J]uror [number] 20 on the panel. ***Commonwealth v. Jackson***, 562 A.2d 338 (Pa.Super. 1989) [(*en banc*)] (holding the primary function of a peremptory challenge is to allow the parties to strike prospective jurors whom they have good reason to believe might be biased, but who are not so clearly and obviously partial that they could otherwise be excluded from the panel). As such, [the trial] court acted within its discretion and did not err in failing to dismiss for cause since the prospective juror assured [the trial] court of her ability to act impartially.

Trial Court Opinion, filed 5/6/19, at 5-6.

Given Juror number 20's responses, the trial court did not commit an abuse of discretion in disallowing Appellant's challenge for cause. ***See Briggs***, ***supra***. It was the trial judge who was in the best position to assess the credibility and fitness to serve of the prospective juror. ***See Commonwealth v. Chambers***, 546 Pa. 370, 685 A.2d 96, 107 (1996) (holding trial court may properly refuse to excuse a juror for cause when the trial judge believes that the juror would be fair and impartial).

Furthermore, the fact Juror number 20 had a "very close friend" who had recently died from a drug-overdose is not dispositive given the juror's indications that she could be fair and impartial. ***See Commonwealth v. Cox***, 603 Pa. 223, 983 A.2d 666, 683 (2009) ("[T]he fact that the prospective juror's son was killed and his murderer was tried before the same judge who was presiding over Appellant's [murder] trial is not dispositive given the

prospective juror's indications that she could be fair and impartial.") (citations omitted)). Accordingly, Appellant is not entitled to relief on his first claim.

In his second issue, Appellant contends the trial court erred when it permitted Detective Harold Zech to testify as an expert witness. Specifically, Appellant contends that, despite the fact the Commonwealth had full knowledge of its intent to call Detective Zech as an expert witness, the Commonwealth failed to disclose this fact until the Friday before trial. Appellant contends that, due to the Commonwealth's untimely disclosure of its intent to call Detective Zech as an expert witness, the Commonwealth violated Pa.R.Crim. 573, thus resulting in unfair surprise to Appellant.

> Initially, we note:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Yocolano*, 169 A.3d 47, 53 (Pa.Super. 2017) (quotation omitted).

Pa.R.Crim.P. 573, pertaining to pretrial discovery and inspection, relevantly provides the following:

> **(B) Disclosure by the Commonwealth.**

> (1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to

the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

\*\*\*

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth[.]

\*\*\*

**(D) Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

Pa.R.Crim.P. 573(B)(1)(e), (D) (bold and italics in original).

Here, with regard to this issue, the trial court aptly indicated the following:

[P]ursuant to [the trial] court's directive, the Commonwealth submitted a Joint Trial Statement on Friday, July 6, 2018[,] [at the final pretrial conference]. Within the Joint Trial Statement, the Commonwealth listed "Harold Zech-Possession with the Intent to Deliver and Tools of the Trade," under subsection 5 titled: "Expert witness to be called at trial." Correspondingly, during trial on Wednesday, July 11, 2018, the Commonwealth sought admission of Harold Zech as an expert in possession with the intent to deliver and the tools of the trade.

Trial Court Opinion, filed 5/6/19, at 8.

The trial court concluded the Commonwealth's disclosure of Detective Zech in the joint trial statement, which was provided to Appellant at the final pretrial conference, met the Commonwealth's duty to disclose as provided by

- 9 -

Pa.R.Crim.P. 573. ***See id.*** The trial court noted Appellant had a fair opportunity to prepare his defense, including factoring into his strategy the fact Detective Zech was going to testify as an expert. ***See id.*** at 10. Further, the trial court noted Appellant did not request a continuance on this basis. ***See id.*** Consequently, we conclude the trial court did not abuse it discretion in finding no merit to Appellant's second issue.

In his third issue, Appellant contends the trial court erred in permitting Detective Zech to testify as an expert since the subject matter to which he testified did not require a person with scientific, technical, or other specialized knowledge beyond that possessed by the average layperson. He also avers Detective Zech's expert testimony was unnecessary to help the jury to understand the evidence or determine a fact in issue.

Pa.R.E. 702, pertaining to testimony by an expert witness, relevantly provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]

Pa.R.E. 702(a) and (b).

The Comment to Rule 702 relevantly provides:

> Pa.R.E. 702 does not change the Pennsylvania rule for qualifying a witness to testify as an expert. In ***Miller v. Brass Rail Tavern,***

> *Inc.*, 541 Pa. 474, 480-81, 664 A.2d 525, 528 (1995), the Supreme Court stated:
>
> > The test to be applied when qualifying a witness to testify as an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine.

Pa.R.E. 702, Comment.

Here, Detective Zech, who testified he had been employed as a detective in the narcotics unit of the Lackawanna County District Attorney's Office for ten years, indicated his day-to-day responsibilities included: conducting drug investigations, identifying the illegal manufacture and sale of narcotics, identifying the persons engaged therein, and arresting offenders. N.T., 7/11/18, at 32. He testified that he routinely interviews confidential informants, narcotic users, and narcotic traffickers with the aim of learning how narcotics are being packaged, the manner and price for which they are being sold, the street terminology for the narcotics, and the identity of persons involved in the narcotics operations. *Id.* at 34.

Detective Zech testified he has performed undercover work, including infiltrating groups of drug dealers, and he has been the lead investigator in approximately 1,000 drug cases. *Id.* at 33, 35. Moreover, he testified that he has testified in-court over 50 times with regard to narcotics cases, and he has testified as an expert approximately one dozen times. *Id.* at 36. He noted that he has training in drug recognition and identification, as well as field test certification. *Id.* at 35.

Based thereon, Detective Zech was offered as an expert by the Commonwealth in the field of possession with the intent to deliver a controlled substance and tools of the trade. As the trial court indicated:

An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice. The purpose of expert testimony is to assist in the comprehension of complex issues not within the ordinary knowledge, intelligence and experience of the jury. **Commonwealth v. Zook**, 615 A.2d 1, 11 (Pa. 1992). Moreover, expert testimony is important in narcotic cases where the other evidence may not conclusively establish that the narcotics were intended for distribution. **Commonwealth v. Kirkland**, 831 A.2d 607, 612 (Pa.Super. 2003). Such testimony is admissible to aid in determining whether the facts surrounding the possession of controlled substances are consistent with the intent to deliver. **See Commonwealth v. Jackson**, 645 A.2d 1366, 1368 (Pa.Super. 1994) (holding that expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use)[.]

As such, [the trial] court allowed Detective Zech to provide testimony as an expert witness regarding possession with the intent to deliver and tools of the trade….Detective Zech offered his expert opinion regarding Appellant's possession and whether that possession was consistent with an intent to deliver or an intent to possess for personal use. [The trial] court accepted Detective Zech as an expert witness, and limited his testimony to his expert opinion. Specifically, the record reflects the Commonwealth sought to elicit Detective Zech's expertise with respect to [F]entanyl mixtures, [F]entanyl user paraphernalia, [F]entanyl packaging, and [F]entanyl measurements, all relative to determining possession with intent to deliver. Such matters are beyond the common knowledge, information or skill possessed by ordinary jurors, who would not be cognizant of the significance of the quantity and form of the [F]entanyl mixture, cutting agents, the individual packaged baggies, lack of user paraphernalia, the two cell phones, and the quantity of United States currency seized from Appellant. Detective Zech did not express an opinion that Appellant actually dealt the narcotics in this case. The testimony of Detective Zech did not abdicate the jury's responsibility as the factfinder. [The trial] court observed that the jury still held an

obligation to decide if the totality of the circumstances indeed constituted an intent to deliver narcotics. When opinion evidence is properly admitted, it is then up to the jury to determine its credibility. The jury is free to reject it, accept it, or give it some weight between the two.

Trial Court Opinion, filed 5/6/19, at 13-15 (some citations omitted).

We conclude the trial court did not abuse its discretion in permitting Detective Zech to testify as an expert pursuant to Pa.R.E. 702. Thus, we find no merit to this claim. *See Commonwealth v. Powell*, 171 A.3d 294 (Pa.Super. 2017) (holding police officer may testify as an expert based upon knowledge gained from practical and occupational training); *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa.Super. 2013) ("A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion.").

In his fourth issue, Appellant contends the trial court erred in permitting Detective Zech to testify as an expert witness since the detective was personally and directly involved in Appellant's arrest in the case *sub judice*.

Initially, we note that, in addressing Appellant's issue, the trial court explained the following:

> [The trial] court allowed Detective Zech to provide testimony as an expert witness regarding possession with intent to deliver and the tools of the trade. While Appellant argues that Detective Zech participated in his arrest, Detective Zech did not testify as a fact witness/investigating officer. Detective Zech did not reference the underlying investigation or [his] role in the subsequent arrest. Detective Zech did not testify to his eyewitness observations or personal knowledge of Appellant.

- 13 -

Rather, Detective Zech offered his expert opinion regarding Appellant's possession and whether that possession was consistent with an intent to deliver or an intent to possess for personal use.

Trial Court Opinion, filed 5/6/19, at 14-15.

In any event, assuming, *arguendo*, Detective Zech offered both expert and lay testimony in this case, this Court has relevantly indicated:

> [W]e conclude that the [R]ules [of Evidence] do not preclude a single witness from testifying, or offering opinions, in the capacity as both a lay and an expert witness on matters that may embrace the ultimate issues to be decided by the fact-finder. [Pa.R.E.] 702 permits an expert to testify to scientific, technical or other specialized knowledge beyond that possessed by a layperson. [Pa.R.E.] 701 permits a layperson to testify in the form of an opinion, however, such testimony must be rationally based on that witness' perceptions. Thus, an expert must have additional specialized knowledge in rendering an opinion; whereas, a lay witness must form an opinion based on his or her rationally based perceptions. The Rules, however, do not specifically delineate that a witness must be only one or the other. Instead, the witness' association to the evidence controls the scope of admissible evidence that he or she may offer. Furthermore, [Pa.R.E.] 704 clearly permits both expert and lay opinion testimony on issues that ultimately must be decided by the trier of fact, in this case, the jury.

**Huggins**, 68 A.3d at 967. Accordingly, we find no merit to Appellant's fourth issue.

In his fifth issue, Appellant contends the trial court erred in permitting Detective Zech to testify beyond the scope of his expert report since no report was produced by the Commonwealth. Appellant reasons that the Commonwealth was required to provide him with a pretrial expert report from Detective Zech. He further reasons that he "was unfairly prejudiced in his trial

preparation due to lack of information regarding what the Commonwealth would elicit from their expert." Appellant's Brief at 29.

Pa.R.Crim.P. 573, pertaining to pretrial discovery and inspection, relevantly provides:

**(B) Disclosure by the Commonwealth.**

\*\*\*

(2) *Discretionary With the Court.*

\*\*\*

(b) If an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

Pa.R.Crim.P. 573(B)(2)(b) (bold and italics in original).

As indicated, Pa.R.Crim.P. 573(B)(2)(b) sets forth that the trial court has discretion in ordering a Commonwealth expert to prepare a report. Moreover, the Comment to Pa.R.Crim.P. 573 relevantly indicates:

Pursuant to paragraph[] (B)(2)(b)…, the trial judge has discretion, upon motion, to order an expert who is expected to testify at trial to prepare a report. However, these provisions are not intended to require a prepared report in every case. The judge should determine, on a case-by-case basis, whether a report should be prepared. For example, a prepared report ordinarily would not be necessary when the expert is known to the parties and testifies about the same subject on a regular basis. On the other hand, a report might be necessary if the expert is not known to the parties or is going to testify about a new or controversial technique.

Pa.R.Crim.P. 573, Comment.

- 15 -

Here, in addressing Appellant's fifth issue, the trial court relevantly indicated the following:

Upon receipt of the Joint Trial Statement, [in which the Commonwealth listed Detective Zech as an expert in possession with the intent to deliver and tools of the trade,] trial counsel did not request [the trial] court to order an expert report, nor did trial counsel demonstrate the necessity for an expert report. Trial counsel did not assert unfamiliarity with [Detective] Zech or a new or controversial technique triggering an expert report. Trial counsel did not request time to consult his own expert. Trial counsel did not assert additional information available or that additional time would have enabled a different or additional line of inquiry on cross-examination of the witness. Importantly, trial counsel failed to specify how [Detective] Zech's testimony caused potential prejudice or in what manner a continuance would have aided his defense. *See Commonwealth v. Galloway*, 771 A.2d 65 (Pa.Super. 2001) (mere surprise caused by the Commonwealth's failure to disclose evidence in a timely fashion is not sufficient to warrant a new trial). Despite trial counsel's arguments, the Commonwealth explicitly disclosed via [the] Joint Trial Statement that [Detective] Zech's testimony involved possession with intent to deliver and tools of the trade. Therefore, trial counsel did become aware of [Detective] Zech's potential [expert] testimony prior to trial and had sufficient time to prepare and factor [it] into his defense strategy. [The trial] court found the Commonwealth's disclosure adequately summarized the basic content of [Detective] Zech's potential expert testimony and did not require the preparation of an expert report. Moreover, [the trial] court provided trial counsel ample opportunity to cross-examine [Detective] Zech's qualifications and credentials. Trial counsel extensively questioned [Detective] Zech's experience with [F]entanyl, specialized training in [F]entanyl, weight, measure, and mixture of [F]entanyl, as well as indicators of narcotics trafficking versus personal use….Here, [Detective] Zech's potential testimony did not necessitate a report, nor did [Detective] Zech prepare a report, [and], therefore, his testimony [did] not exceed the scope of a report. In fact, the Commonwealth's Joint Trial Statement contained language sufficient to notify Appellant of [Detective] Zech's intent to testify regarding possession with intent to deliver and the tools of the trade.

\*\*\*

- 16 -

Notwithstanding the absence of an expert report, a review of Detective Zech's testimony reveals that Detective Zech did not exceed the language contained in the Commonwealth's Joint Trial Statement. Indeed, Detective Zech testified to possession with intent to deliver and tools of the trade.

Trial Court Opinion, filed 5/6/19, at 9-13 (some citations omitted).

We find no abuse of discretion. **See** Pa.R.Crim.P. 573. Moreover, we note that Appellant has failed to demonstrate that he suffered prejudice from the admission of Detective Zech's testimony such that he would be entitled to relief for an alleged discovery violation. **See Commonwealth v. Henry**, 550 Pa. 346, 706 A.2d 313 (1997) (holding that even where an expert's testimony went beyond the scope of the expert's report, the defendant is not entitled to relief absent proving he suffered prejudice from the admission of the testimony).

In his sixth issue, Appellant contends the trial court erred in permitting Detective Zech to answer questions posed as hypotheticals. Specifically, Appellant contends the Commonwealth's use of hypotheticals improperly permitted Detective Zech to offer testimony on an ultimate issue that was reserved for the jury.

Pa.R.E. 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Moreover, it is well-settled that the Commonwealth may ask an expert a hypothetical question so long as "there is evidence of record supporting the hypothetical." **Commonwealth v. Galvin**, 603 Pa. 625, 985 A.2d 783, 801 (2009). "[A]n expert may give an

opinion in response to a hypothetical, provided the set of facts assumed in the hypothetical is eventually supported by competent evidence and reasonable inferences derived therefrom." ***Commonwealth v. Petrovich***, 538 Pa. 369, 648 A.2d 771, 772 (1994).

Here, in addressing Appellant's sixth issue, the trial court indicated the following:

> During direct examination, [the assistant district attorney ("ADA")] examined Detective Zech through the use of hypothetical questions. The following exchange occurred:
>
> > [ADA]: Hypothetically, if someone had in their possession 54 grams of Fentanyl packaged within 22 separate baggies in one larger plastic bag, just based on that alone, would you be able to determine if that's possession with the intent to deliver or possession for personal use?
> >
> > [DETECTIVE] ZECH: I would deem that as possession with the intent to deliver, that's a large quantity of Fentanyl. As I stated earlier, two milligrams could lead to a fatal overdose. That's a tremendous amount.
> >
> > [ADA]: Hypothetically, if I add to that and said the 54 grams is packaged in 22 separate individual baggies in one larger bag combined with $1,460 of U.S. currency and two cell phones on his person, would you be able to determine if that's a possession with intent to deliver or possession for personal use?
> >
> > [DETECTIVE] ZECH: With a large amount of U.S. currency, the two cell phones and on top of that, the 54 grams packaged that way, yes, I would determine that as possession with intent to deliver.
> >
> > [ADA]: An[d] again, lastly, hypothetically, if someone had the 54 grams, a large amount of U.S. currency, the two cell phones, no user paraphernalia on their person, would you be able to determine if the Fentanyl that was possessed was for possession with the intent to deliver or possession for personal use?

- 18 -

[DETECTIVE] ZECH: It's even stronger without user paraphernalia in the picture that I would deem it being possession with the intent to deliver.

[ADA]: And all these determinations that you've made today and all the answers that you've given [are] within a reasonable degree of professional certainty within your field?

[DETECTIVE] ZECH: Absolutely.

N.T. [7/11/18 at] 48-49.

A review of the hypothetical [questioning] above is plainly supported by reasonable inferences derivable from the evidence presented during the trial. Prior to Detective Zech's testimony, the Commonwealth offered sufficient and competent evidence to establish that Appellant possessed narcotics with the intent to deliver, and not simply for personal use….Detective Zech's expert opinion that Appellant possessed narcotics with the intent to deliver, based upon the hypothetical possession of 54 grams of [F]entanyl in 22 separate individual baggies inside one large bag combined with $1,460 in U.S. currency and two cell phones with no user paraphernalia, was not unreasonable in the specific circumstances of this case. The Commonwealth's hypothetical added no additional facts, but simply allowed Detective Zech to render an expert opinion on whether Appellant possessed the narcotics with the intent to deliver, or for personal use. Importantly, [the trial] court specifically instructed the jury in [assessing] the weight to accord expert testimony along with other factors.

Trial Court Opinion, filed 5/6/19, at 17-19.

We agree with the trial court's sound analysis. In the case *sub judice*, the record establishes that the prosecutor's line of hypothetical questions to Detective Zech was based on competent evidence presented at trial. Moreover, the fact Detective Zech's expert opinion embraced an ultimate issue (whether a person who possessed the narcotics in the same amount and manner as Appellant did so with the intent to deliver or for personal use) does

not render the opinion inadmissible. *See* Pa.R.E. 704. Thus, we conclude the trial court did not abuse its discretion in this regard.

In his seventh issue, Appellant contends the trial court erred in sentencing Appellant in the aggravated range. Specifically, Appellant contends the trial court relied upon factors (the weight and type of substance), which are already considered in the sentencing guidelines, thus resulting in the trial court impermissibly "double counting" these factors. This presents a challenge to the discretionary aspects of Appellant's sentence. *See Commonwealth v. Johnson*, 758 A.2d 1214 (Pa.Super. 2000).

We have long held that the right to appeal a discretionary aspect of sentence is not absolute. *Commonwealth v. Zirkle*, 107 A.3d 127 (Pa.Super. 2014). Instead, such challenges are considered petitions for allowance of appeal. *See id.* Generally, an appellant who wishes to challenge the discretionary aspects of his sentence must satisfy a four-part test to invoke this Court's jurisdiction:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect [pursuant to Pa.R.A.P. 2119(f)]; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.* at 132 (citation omitted). Finally, whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. *See id.*

Here, Appellant filed a timely notice of appeal, preserved his issue in a timely post-sentence motion, and included a separate Pa.R.A.P. 2119(f) statement in his brief. Moreover, Appellant's issue presents a substantial question permitting our review. *Commonwealth v. Robinson*, 931 A.2d 15 (Pa.Super. 2007) (*en banc*). Accordingly, we turn to a review of the merits of Appellant's sentencing claim.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014) (quotation omitted).

When imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. *See Commonwealth v. Burns*, 765 A.2d 1144 (Pa.Super. 2000). The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. *See id.* However, where the sentencing judge had the benefit of a pre-sentence investigation report ("PSI"), it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. *Id.*

[Moreover,] [w]hen imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on the victim and community, and rehabilitative needs of the defendant....Furthermore, [a] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence[.] The sentencing court, however, must also consider the sentencing guidelines.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super. 2006) (quotation marks, quotations, and citation omitted).

Generally, "[i]t is impermissible for a court to consider factors already included within the sentencing guidelines as the *sole* reason for increasing or decreasing a sentence to the aggravated or mitigated range." *Shugars*, 895 A.2d at 1275 (emphasis in original). However, "[t]rial courts are permitted to use factors already included in the guidelines if they are used to supplement other extraneous sentencing information." *Id.*

When deciding whether a court improperly has based an aggravated sentence on a factor that is already considered by the sentencing guidelines, we have stated:

[t]he guidelines were implemented to create greater consistency and rationality in sentencing. The guidelines accomplish the above purposes by providing a norm for comparison, *i.e.*, the standard range of punishment, for the panoply of crimes found in the crimes code and by providing a scale of progressively greater punishment as the gravity of the offense increases....The provision of a "norm" also strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's character or criminal history that deviates from the norm and must be regarded as not within the guidelines contemplation. Given this predicate, simply indicating that an

- 22 -

offense is a serious, heinous or grave offense misplaces the proper focus. The focus should not be upon the seriousness, heinousness or egregiousness of the offense generally speaking, but, rather, upon how the present case deviates from what might be regarded as a "typical" or "normal" case of the offense under consideration.

*Commonwealth v. Fullin*, 892 A.2d 843, 848 (Pa.Super. 2006) (citation omitted). Moreover, "[a]n aggravated range sentence [is] justified to the extent that the individual circumstances of [the defendant's] case are atypical of the crime for which [the defendant] was convicted, such that a more severe punishment is appropriate." *Id.*

In the case *sub judice*, during sentencing, the ADA informed the trial court that Appellant had no ties to the community, but he had outstanding criminal charges and active warrants. N.T. 10/22/18, at 2. The ADA noted Appellant had "one misconduct at the Lackawanna County Prison," and Appellant was uncooperative with the probation officer, who completed the PSI. *Id.* at 3. The ADA requested an aggravated range sentence. *Id.*

In response, defense counsel questioned the accuracy of Appellant's prior record score as contained in the PSI. *Id.* Further, defense counsel explained that Appellant was uncooperative with the probation officer because he continues to maintain his innocence. *Id.* at 4. Defense counsel noted "[t]here were no drug deliveries observed or made in this case. There were no controlled buys." *Id.* Defense counsel requested a standard range sentence. *Id.* at 5.

Appellant was given his right to allocution, and he stated:

Well, your Honor, you know I'm not from here. I've been trying to get bail this whole time. In the beginning[,] [the ADA] had said he didn't want to give me bail because I wasn't from the area or something like that. My mom was in the hospital. I have a lot of family members that died while I was in jail. I mean this is above beyond, like, I don't know.

*Id.*

The trial court then stated the following:

[Appellant,] in reviewing the facts as outlined by the [ADA], and the fact that you were on supervision at the time, as well as the weight and severity of the substance you had, the [trial] court does find that there is more than aggravating factors in the case.

In regard to [PWID], the [trial] court will be sentencing you to 84 to 168 months plus five years' probation. In regard to the drug paraphernalia, six to 12 months, for an aggregate of 90 to 180 months [in jail] plus five years' special probation[.]

*Id.* at 5-6.

Moreover, in addressing Appellant's sentencing issue, the trial court relevantly stated the following in its Opinion:

In the present case, the standard range of the Sentencing Guidelines relative to Count I, Possession with Intent to Deliver,…provided for a minimum sentence of seventy-two (72) months incarceration, while the aggravated range provided up to eighty-four (84) months incarceration. Appellant was sentenced to a term of eighty-four (84) [to] one hundred and sixty-eight (168) months incarceration, with five (5) years state probation, a sentence within the aggravated range. The standard range of the Sentencing Guidelines relative to Count II, Possession of Drug Paraphernalia,..provided for a minimum sentence of restorative sanctions to six (6) months. Appellant was sentenced to a term of six (6) to twelve (12) months consecutive to Count 1.

Prior to sentencing, [the trial] court carefully reviewed the PSI, the applicable standard Sentencing Guidelines, Appellant's character and circumstances in his life, including his lack of connection to the area, lack of success while under supervision, lack of cooperation with the Lackawanna County Probation

- 24 -

Department, and multi-state history of delinquency and criminality. At the time of sentencing, [the ADA] requested an aggravated range sentence. [The ADA] stated:

> After a review of the PSI, your Honor, there are no ties to the area which the Commonwealth was able to find. [Appellant] does have outstanding firearms charges and active warrant[s]. His entire criminal record is out of the state of Massachusetts or Connecticut, further showing that there [are] no ties to this area. [Appellant] did have one misconduct at the Lackawanna County Prison, and after a review of the [PSI,] your Honor, [Appellant] was uncooperative with the probation officer who was attempting to do the [PSI]. Your Honor[,] based on the litany of these factors, the Commonwealth would ask for an aggravated sentence in this case of 84 months.

N.T. [10/22/18 at] 2-3.

In response, [Appellant] agreed that he held no ties to the community, and [he] demonstrated an indifference to the seriousness of his actions. [Appellant] made egocentric statements, showed a lack of remorse, and shifted responsibility. In an unapologetic manner, [Appellant] stated: "I've been trying to get bail this whole time. In the beginning, [the ADA] had said he didn't want to give me bail because I wasn't from the area or something like that. My mom was in the hospital. I have a lot of family members that died while I was in jail. I mean this [is] above beyond, like, I don't know. *Id.* at 5.

Accordingly, [the trial] court relied on several factors that led to Appellant's aggravated range sentence on Count I. Observing [Appellant's] failure to accept responsibility, and failure to express remorse, considered in relation to the factors outlined by [the ADA] and the [inherent] dangerousness of [F]entanyl, [the trial] court adopted the Commonwealth's factors and stated: "[Appellant,] in reviewing the facts as outlined by the [ADA], and the fact that you were on supervision at the time, as well as the weight and severity of the substance you had, [the trial] court does find that there is more than aggravating factors in the case." *Id.* Also, familiar with the testimonial and documentary evidence presented during trial, including the credible testimony of lab technician, Jennifer J. Libus, who tested the contents of the individual baggies, multiple police officer[s'] observations of Appellant disposing a plastic bag into the bushes of the hotel

parking lot, and recovery of two cell phones and $1,460 in U.S. currency, [the trial] court recognized the necessity of [incarceration].

\*\*\*

A review of the sentencing transcript reveals that [the trial] court considered the weight and severity of the substance not as the sole factor, but as one factor among several that led to the aggravated range sentence on Count I. Nothing in the record suggests that [the trial] court solely considered the weight and severity of the substance, other than in the context of his complete lack of acknowledgment of responsibility and remorse for the crimes he committed. In fact, as articulated by [the ADA], the record reveals that [the trial] court did consider the character, history, and condition of Appellant as required by 42 Pa.C.S. § 9725. It is clear that [the trial] court based its sentence not on the weight of the [F]entanyl possessed, a factor considered in setting the sentencing guidelines, but on the [inherent] dangerousness of the [F]entanyl, the way the [F]entanyl was packaged in individual plastic baggies, combined with police observations, recovered U.S. currency and two cell phones to indicate the potential threat and fatal impact to the community by Appellant. Therefore, as required by 42 Pa.C.S. § 9721(b), [the trial] court upheld a duty to protect the community and exhibited serious concern for the impact of Appellant's offenses on the public.

\*\*\*

[The trial] court found that a standard range sentence would depreciate the seriousness of the offense committed and create a greater risk of violating supervision. [The trial] court viewed Appellant as a danger to the community, a resident of Massachusetts solely entering the community to commit criminal offenses with no indication of productivity or lawfully contributing to the community.

Therefore, fully aware of [Appellant's] criminal offense, the information contained in the PSI, the applicable sentencing guidelines, the testimony of all the witnesses presented at trial, argument by both counsel, Appellant's statements at sentencing as well as the punitive, deterrent, rehabilitative, and protective purposes of sentencing, [the trial] court weighed all factors accordingly, and for compelling reasons[,] imposed an aggravated range sentence on Count I within the statutory maximum.

Trial Court Opinion, filed 5/6/19, at 21-25 (footnotes, citations, and bold omitted).

Based on the aforementioned, we find no merit to Appellant's discretionary aspects of sentencing claim. Specifically, we disagree with Appellant that the trial court impermissibly considered factors already included in the sentencing guidelines as the sole reason for increasing his sentence to the aggravated range. *See Shugars*, *supra*.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2019