J-S23008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
NATHAN COOPER :
:
Appellant : No. 1313 EDA 2023

Appeal from the Judgment of Sentence Entered December 19, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0003108-2022

BEFORE: STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.: **FILED SEPTEMBER 25, 2024**

Appellant, Nathan Cooper, appeals from his judgment of sentence of 4-8 years' imprisonment for possession of firearms by prohibited persons, carrying a firearm without a license, and carrying a firearm in Philadelphia.[1] Appellant contends, *inter alia*, that the court erred in denying his motion to suppress a firearm found during a search of his vehicle on March 26, 2022. We hold that the court properly denied the suppression motion, and we affirm.

The evidence adduced during Appellant's suppression hearing was as follows. On March 26, 2022, at approximately 12:30 p.m., Police Officer Jabari Williams was on patrol with his partner near 1 East Haines Street in Philadelphia when he pulled over a silver Nissan Sentra for excessive window tint. N.T., 8/19/22, at 9-10. As Officer Williams approached the vehicle,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105, 6106, and 6108, respectively.

Appellant, the sole occupant, rolled down the driver's side window. *Id.* at 9, 16-17. Appellant complied with Officer Williams' request for identification and vehicle registration information. *Id.* at 17. Officer Williams asked Appellant whether any firearms were in the vehicle, and Appellant replied, "there shouldn't be." *Id.* at 30. Appellant also answered that he did not possess a license to carry a firearm. Officer Williams observed that Appellant seemed nervous, that his hands were shaking, and that he paused before answering the officer's questions. *Id.* at 13.

After directing Appellant to keep his windows open, Officer Williams and his partner returned to the police vehicle. *Id.* at 16-17. At that point, Officer Williams observed Appellant move his body down toward the area underneath his seat. *Id.* at 13-14. Officer Williams saw Appellant look at him in his side view mirror, then "get directly towards underneath the driver's side seat," then sit back up, and again look back at Officer Williams in his mirror. *Id.* at 14. Officer Williams later testified that he believed Appellant had a weapon because Appellant

> was nervous and because he reached down. From my experience, when people basically look in the mirror … they look in the mirror to see exactly where police are. And then at that time, when he went underneath the driver's side seat, when he dipped towards underneath the driver's side seat, in my experience, it shows that you're either trying to hide something or to basically remove something from my view.

*Id.* at 20 (cleaned up). Officer Williams knew the location to be one with a high rate of crime and had recovered illegal firearms "countless" times in the district. *Id.* at 14.

Because Officer Williams believed that Appellant was attempting to hide a firearm under the driver's seat, he decided to frisk Appellant and conduct a protective search of the vehicle to ensure his and his partner's safety. *Id.* at 20–21. When the officer returned to Appellant's car, Appellant had rolled most of the windows back up despite the earlier directive to keep them open. *Id.* at 31-32.

Officer Williams asked Appellant to step outside, frisked him, and asked him to stand at the back of the car with his partner. *Id.* at 20. The officer knelt down and peered under the driver's seat, where he observed what he immediately recognized was a firearm. *Id.* at 13, 19, 31-32. After placing Appellant in handcuffs, the officer returned to Appellant's car and recovered a Glock semiautomatic weapon. *Id.* at 9. Appellant was arrested for firearms offenses.

Appellant moved to suppress all evidence relating to the traffic stop. Following a hearing, the court granted Appellant's motion in part[2] but denied suppression of the firearm. The court held that the initial stop was justified

---

[2] The court determined that Appellant made certain statements without requisite warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), and granted suppression of those statements.

by Appellant's excessive window tint. The court also held that the limited search of Appellant's vehicle was constitutional, reasoning that while it is understandable for drivers to display some nervousness during a traffic stop, the court "[saw] a difference in [Appellant's] behavior when there was an inquiry about the possibility of contraband in the car." *Id.* at 59. The court held that Officer Williams observed the weapon in plain view from a lawful vantage point, and it was immediately apparent that the weapon was incriminating. Pa.R.A.P. 1925 Opinion, 8/17/23, at 5-6.

Appellant proceeded to a stipulated non-jury trial, where the Commonwealth introduced evidence that defendant was statutorily prohibited from possessing a firearm due to 2017 convictions for aggravated assault and robbery (for which he was on parole at the time of this arrest). The court found Appellant guilty of possession of a firearm by prohibited persons, carrying a firearm without a license, and carrying a firearm in Philadelphia.

On December 19, 2022, the court imposed sentence. Appellant filed timely post-sentence motions, which were denied, and a timely appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises three issues in this appeal, which we re-order for purposes of convenience:

> 1. Whether the suppression court erred by denying the motion to suppress despite evidence of a warrantless search of Appellant's vehicle without exigent circumstances.

- 4 -

2. Whether the evidence presented at trial was sufficient to establish each and every element of the crimes for which Appellant was convicted.

3. Whether the sentencing court abused its discretion by imposing a manifestly excessive sentence that was not based upon the gravity of the violation, the extent of Appellant's record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa.C.S.A. Section 9721 of the Sentencing Code.

Appellant's Brief at 8.

We first address Appellant's argument that the trial court erred in denying his motion to suppress the firearm recovered during the warrantless search of his vehicle. The standard of review for the denial of a motion to suppress evidence is as follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Bernard***, 218 A.3d 935, 940 (Pa. Super. 2019).

Appellant does not object to the trial court's determination that the initial traffic stop was justified because of excessive window tint. Appellant

- 5 -

does object, however, to the search of Appellant's vehicle, claiming that exigent circumstances did not exist for the search. We hold that the trial court properly denied suppression but on a different ground than the trial court relied upon.[3] The trial court cited the plain view doctrine as the basis for denying suppression. We conclude that the proper ground for denying suppression is under the protective sweep doctrine articulated in *Michigan v. Long*, 463 U.S. 1032 (1983), and followed by this Court in *Commonwealth v. Muhammad*, 289 A.3d 1078 (Pa. Super. 2023).

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." *Commonwealth v. Heidelberg*, 267 A.3d 492, 502 (Pa. Super. 2021).

Generally, the warrantless search of a vehicle requires the Commonwealth to establish both probable cause and exigent circumstances. *See Commonwealth v. Alexander*, 243 A.3d 177, 181 (Pa. 2020). However, as this Court explained in *Muhammad*, the United States Supreme

_____

[3] Where the result is correct, we may affirm a lower court's decision on any ground whether or not relied upon by that court. *Commonwealth v. Lehman*, 275 A.3d 513, 520 n.5 (Pa. Super. 2022).

Court held in **Long** that the principles of a limited **Terry**[4] frisk extend "to a search of the passenger compartment of a vehicle for weapons." **Muhammad**, 289 A.3d at 1088. **Long**, as we said in **Muhammad**, held that

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses **a reasonable belief based on specific and articulable facts** which, taken together with the rational inferences from those facts, **reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons**.

**Muhammad**, 289 A.3d at 1088 (citing **Long**, 463 U.S. at 1049-50; footnote, citations & quotation marks omitted; emphases added). An investigative detention during a vehicle stop "involves a [police] investigation 'at close range, when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a quick decision as to how to protect himself and others from possible danger.'" **Id.** at 1089 (citing **Long**, 463 U.S. at 1052). Therefore, "the balancing required by **Terry** clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." **Id.** (citing **Long**, 463 U.S. at 1051).

When considering whether a police officer has the requisite reasonable suspicion to conduct a limited protective search of a vehicle, we must not view

---

[4] **Terry v. Ohio**, 392 U.S. 1 (1968).

- 7 -

the facts in isolation "but in light of the totality of the circumstances[.]" *Commonwealth v. Cartagena*, 63 A.3d 294, 304 (Pa. Super. 2013) (*en banc*). Applying this test, we have held that a defendant's "furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and [a] nighttime stop, was sufficient to warrant a reasonable police officer to believe that his safety was in danger and that [the defendant] might gain immediate control of a weapon." *Commonwealth v. Buchert*, 68 A.3d 911, 916-917 (Pa. Super. 2013); *see also Muhammad*, 289 A.3d at 1089 (sergeant had reasonable belief that defendant was potentially armed and dangerous to conduct protective sweep of console area of rental vehicle defendant was driving; sergeant was responding to 911 call of check fraud in progress at bank, defendant's vehicle matched description of car given by eyewitness, defendant attempted to put vehicle into reverse as if to leave when sergeant pulled behind his vehicle, sergeant observed defendant furtively move about the inside of the vehicle blocking sergeant's view of console area, which made sergeant feel "as if there was something that could be dangerous to him" based on his training and experience, and search was limited to area that defendant had immediate control and could contain a weapon); *Commonwealth v. Simmons*, 17 A.3d 399, 401 (Pa. Super. 2011) (reasonable suspicion existed for protective sweep and search of vehicle's passenger compartment where traffic stop took place at night in high-drug and high-crime area, and officer saw defendant make

furtive movement of reaching under his seat and then towards his chest, consistent with concealing weapon); *In re O.J.*, 958 A.2d 561, 566 (Pa. Super. 2008) (reasonable suspicion existed where traffic stop occurred at night, defendant initially failed to stop his vehicle when signaled by police, and defendant made "rapid and furtive hand movements over the vehicle's console," which had been left partially opened); *Commonwealth v. Murray*, 936 A.2d 76, 80 (Pa. Super. 2007) (finding reasonable suspicion where traffic stop occurred at night and in high-drug area, defendant's vehicle had tinted windows, and defendant made "a lot of movement in the vehicle" as officer was approaching); *see also id.* at 79-80 (potential harm to officers increases "exponentially" when officers approach vehicles during traffic stops "whose occupants and interiors are blocked from view by tinted windows").

In contrast, in *Cartagena*, we held that an officer lacked reasonable suspicion to conduct a warrantless search of a vehicle where (1) the stop occurred at night, (2) the defendant's vehicle had tinted windows, and (3) the defendant appeared "extremely nervous." *Id.* at 304. *Cartegena* reasoned that there was no evidence that the defendant had made furtive movements, that the stop occurred in a high-crime area, or that the police saw any indication of a weapon in the vehicle prior to the search. *Id.* at 304-306; *see also Commonwealth v. Moyer*, 954 A.2d 659, 669-670 (Pa. Super. 2008) (evidence that vehicle's occupants engaged in furtive movements and appeared nervous was insufficient to establish reasonable suspicion);

*Commonwealth v. Reppert*, 814 A.2d 1196, 1206 (Pa. Super. 2002) ("We have found furtive movements [fail to establish reasonable suspicion] even when they occur in high crime environments in the late hours of the night ... Thus, we find no basis to conclude that excessive nervousness and furtive movements, even considered together, give rise to reasonable suspicion of criminal activity").

Here, Officer Williams' protective search was supported by articulable facts justifying his reasonable belief that Appellant was attempting to conceal a weapon. The traffic stop took place in a high-crime area in which Officer Williams had recovered illegal firearms on many occasions. Appellant's vehicle had excessively tinted windows. When Officer Williams first interacted with Appellant, he appeared nervous, his hands were shaking, and he paused before answering the officer's questions. In response to the officer's question whether there were any firearms in the car, Appellant gave an indefinite, noncommittal response that there "shouldn't" be any. Although the officer asked Appellant to roll all of his windows down, Appellant rolled most of these tinted windows back up when Officer Williams stepped away. While seated in his vehicle, Officer Williams saw Appellant look back at him in the side view mirror, duck down toward the floor, and sit back up. Finally, Officer Williams limited his protective search to a glance under the driver's seat, the area over which Appellant had immediate control and which could contain a weapon. This lengthy combination of factors aligns more closely with decisions finding

reasonable suspicion for a protective search during a traffic stop (**Muhammad**, **Buchert**, **Simmons**, **O.J.**, **Murray**) than with decisions finding lack of reasonable suspicion for a protective search during a traffic stop. Accordingly, we agree with the trial court's decision to deny suppression of the firearm recovered by Officer Williams.[5]

Next, Appellant asserts that the evidence was insufficient to sustain his convictions. Both the trial court and the Commonwealth maintain that Appellant waived this argument by filing a boilerplate statement of matters complained of on appeal. We agree.

To preserve a sufficiency claim for appellate review, the appellant's Pa.R.A.P. 1925(b) statement must "specify the element or elements upon which the evidence was insufficient." **Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009). Specificity is necessary so that the trial court is not forced to "act as counsel for Appellant and try to anticipate, guess or predict what Appellant wanted to appeal." **Commonwealth v. Lemon**, 804

---

[5] Appellant also argues in his appellate brief that the police officers lacked reasonable suspicion to detain and probable cause to arrest him. The Commonwealth correctly points out that this argument is waived because it was not raised in Appellant's Rule 1925(b) statement of matters complained of on appeal, which claimed only that the warrantless search was not justified by exigent circumstances. Pa.R.A.P. 1925(b) statement, 7/26/23, at ¶ 2. **See Commonwealth v. Davis**, 273 A.3d 1228, 1239 n.5 (Pa. Super. 2022) (defendant waived claim that trial court abused its discretion in permitting prospective jurors to sit in courtroom gallery, which was approximately 100 feet from counsel, during voir dire, where defendant failed to raise this specific issue in his statement of errors complained of on appeal).

A.2d 34, 39 (Pa. Super. 2002). When an appellant fails to identify in his Rule 1925(b) statement the specific elements of the specific crimes he is challenging, his claim is waived. ***Gibbs***, 981 A.2d at 281; ***Commonwealth v. Bonnett***, 239 A.3d 1096, 1106-07 (Pa. Super. 2020) (finding waiver due to blanket statement in Rule 1925(b) statement that there was "insufficient evidence to sustain a verdict of guilty of each charge in the case"); ***Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013) (sufficiency claim waived where appellant's Rule 1925(b) statement "simply provided a generic statement stating '[t]he evidence was legally insufficient to support the convictions'"). Specificity is of particular importance where, as here, Appellant was convicted of multiple crimes consisting of multiple elements. ***Gibbs***, 981 A.2d at 281.

Here, Appellant's Rule 1925(b) statement of errors includes the following claim of error: "The evidence presented at trial was insufficient to sustain a conviction as a matter of law. The Commonwealth failed to establish beyond a reasonable doubt each element of every crime for which appellant was convicted." Appellant's Statement Of Matters Complained Of On Appeal, 7/26/23, at ¶ 1. This boilerplate, conclusory statement was deficient as a matter of law to preserve a sufficiency challenge for appellate review. Appellant was convicted of three firearms offenses, but he failed to identify the specific element(s) of any offense which were unsupported with sufficient evidence; nor did he explain why the evidence was insufficient to establish

any element. Instead, he simply objected to the sufficiency of "each element of every crime for which [he] was convicted," an assertion that was no more specific than the sufficiency claims that we found waived in *Bonnett* and *Garland*. Accordingly, we hold that Appellant waived his challenge to the sufficiency of the evidence.

In his final argument, Appellant challenges the discretionary aspects of his sentence. Appellant argues that the trial court imposed a "manifestly excessive sentence that was not based upon the gravity of the violation, the extent of his record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in Section 9721 of the Sentencing Code." Appellant's Brief at 18. We disagree.

Challenges to the discretionary aspects of sentencing are not entitled to appellate review as a matter of right. *Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019). Rather, such challenges are considered petitions for allowance of appeal. *Id.* Thus, an appellant must invoke our jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether Appellant's brief has a fatal defect pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Id.*

Here, Appellant filed a timely notice of appeal, a timely post-sentence motion seeking modification of his sentence, and a Pa.R.A.P. 2119(f) statement in his appellate brief. It is questionable, however, whether Appellant has raised a substantial question. *See Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa. Super. 2013) ("This Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review.")

Assuming that Appellant raised a substantial question, we agree with the trial court that no relief is due. We review a sentencing court's determination for an abuse of discretion:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Clemat*, 218 A.3d at 959 (citing *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014)). A sentencing court must state its reason for the sentence on the record. 42 Pa.C.S.A. § 9721(b); *Commonwealth v. Fowler*, 893 A.2d 758, 767 (Pa. Super. 2006). This can be satisfied by a trial court stating on the record that it reviewed the pre-sentence investigation report. *Fowler*, 893 A.2d at 767. Our Supreme Court has stated:

> Where [a] pre-sentence report exists, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed

- 14 -

those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention in engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

Our review of the record indicates that Appellant's sentence represents a proper exercise of the trial court's discretion. The trial court had the benefit of a pre-sentence investigation and Appellant's mental health evaluation. N.T., 12/19/22, at 13. Moreover, the court reasoned:

With Appellant's prior-record score of 4 and an offense-gravity score of 11 for Possession of Firearm Prohibited (F1), the Sentencing Guidelines recommend a sentence of 5 to 6½ years, plus or minus 1 year. *See* N.T., 12/19/2022, at 14. Appellant's sentence of 4 to 8 years begins at the minimum of the recommended range and does not exceed the statutory maximum of 20 years. *Id.* at 44-45; 18 Pa.C.S.[A.] § 1103(1). In determining Appellant's sentence, the Trial Court considered all requirements of 42 Pa.C.S.[A.] § 9721. *See* N.T., 12/19/22, at 44. The Trial Court further contemplated mitigation on Appellant's sentence, based upon the testimony provided by the family, their compelling letters, and arguments of counsel. *Id.*

Trial Ct. Op. at 8. Thus, contrary to Appellant's argument, the trial court considered Appellant's rehabilitative needs and mitigating factors. Indeed, the trial court imposed a mitigated sentence after considering all relevant

criteria. Further, the trial court expressly stated that it "[took] into account the need to protect the public, the gravity of this offense as it relates to the impact on the community, as well as [Appellant's] rehabilitate needs." N.T., 12/19/22, at 44.

Appellant claims that confinement to state prison was "unnecessary" because he was not at risk of recidivism. Appellant's Brief at 20. Appellant overlooks the fact, however, that he **is** a recidivist, since he was in illegal possession of a gun while on parole for aggravated assault and robbery at the time of his arrest. As the trial court stated, "I know you say 'I didn't do anything wrong, and I didn't commit any more crimes,' but based on your past conviction, you can't have a gun. You can't be around guns. You can't have a gun in the car." N.T., 12/19/22, at 42-43.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/25/2024

- 16 -