J-S12030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DUNG VAN DANG | : | |
| | : | |
| Appellant | : | No. 1660 MDA 2022 |

Appeal from the Judgment of Sentence Entered November 2, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0004449-2020

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED: SEPTEMBER 18, 2023**

Dung Van Dang (Appellant) appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas after his jury convictions of one count each of driving under the influence (DUI) — general impairment (fourth offense), DUI — high rate of alcohol, driving an unregistered vehicle, driving while license suspended — relating to DUI offense, and careless driving.[1]  Contemporaneous with this appeal, Appellant's counsel, Diana C. Kelleher, Esquire, has filed a petition to withdraw from representation and an **Anders** brief.[2]  The **Anders** brief presents the following

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. 3802(a)(1), (b), 1301(a), 1543(b)(1)(i), 3714(a).

[2] **See Anders v. California**, 386 U.S. 738, (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

purported claims: (1) trial counsel was ineffective; (2) Appellant's sentence is illegal; and (3) the trial court improperly denied Appellant's motion for mistrial. For the reasons below, we affirm the judgment of sentence and grant Attorney Kelleher's petition to withdraw.

On the morning of September 30, 2020, Pennsylvania State Trooper Ian Hutchinson witnessed the driver of a white BMW sedan, later identified as Appellant, pass two vehicles using the center turn lane. N.T. Jury Trial Vol. I, 7/13/22, at 56-58. When the trooper attempted to initiate a traffic stop, Appellant pulled into an apartment complex, exited his vehicle, and entered the apartment building. *Id.* at 58-60. Shortly thereafter, the trooper saw Appellant walking down the road away from the apartment, called for assistance, and stopped Appellant to speak about the traffic violation. *Id.* at 65-67. Assistance arrived and based on each of the troopers' observations, they suspected Appellant was impaired and unable to drive. *See id.* at 65-66, 78-79, 95. Appellant then was placed under arrest. *Id.* at 95.

Appellant subsequently was charged with one count each of DUI — general impairment, and DUI — high rate of alcohol.[3] Appellant was also charged with the following summary offenses — driving an unregistered

---

[3] Initially, Appellant was only charged with DUI — general impairment under Subsection 3802(a)(1), but the Commonwealth amended the information to include the additional offense of DUI — high rate of alcohol under Subsection 3802(b) on July 11, 2022. *See* Amended Information, 7/11/22; Information, 11/16/20.

vehicle, driving while license suspended — relating to DUI offense, and careless driving.

This matter proceeded to a two-day jury trial that began on July 13, 2022[4] where the Commonwealth presented the following evidence.

Trooper Hutchinson testified that on September 30, 2020, he was the vehicle maintenance officer at the Avondale Barracks in Chester County. *See* N.T. Jury Trial Vol I at 56. As part of his duties, Trooper Hutchinson went to the troop headquarters in Lancaster County to pick up supplies. *Id.* at 57. Around 9:52 a.m. that morning, he was traveling westbound on Lincoln Highway East near Macklevein Road in Lancaster County when he observed a white BMW sedan traveling in the opposite direction pass two vehicles by using the center turning lane.[5] *Id.* at 57-58, 73. The trooper described this lane as a designated turn-only lane, which was marked along the highway. *Id.* at 58. He then activated his emergency lights, turned his vehicle around, and attempted to initiate a traffic stop based on this violation. *Id.* at 58-59. The

_____

[4] It merits mention the criminal docket incorrectly states Appellant entered a non-negotiated guilty plea on each of his charges. *See* Criminal Docket CP-36-CR-0004449-2020 at 5. However, the record reflects Appellant had a two-day jury trial on July 13 and 14, 2022. *See* N.T. Jury Trial Vol. I, 7/13/22; N.T. Jury Trial Vol. II, 7/14/22; Verdict Sheet, 7/14/22.

We also note that at the time of trial, Appellant had the assistance of an interpreter.

[5] Trooper Hutchinson initially stated he was traveling eastbound on Lincoln Highway, but later testified he was traveling westbound. *See* N.T. Jury Trial Vol. I at 58, 73.

driver of the BMW pulled his car into a nearby parking lot for an apartment building. *Id.* at 59. The trooper remained in his car and observed a man — later identified as Appellant — exit the BMW and walk into the apartment building. *Id.* at 59-60.

Trooper Hutchinson testified that instead of engaging with Appellant, he decided to "run the registration" plate of the car.[6] N.T. Jury Trial Vol I. at 60-62. This search revealed the car was registered to Appellant at a Philadelphia address "not anywhere near the apartment complex or in Lancaster." *See id.* at 62, 64. The trooper also noted the registration was expired. *Id.* at 62. Based on the Philadelphia address, the trooper became "suspicious that [Appellant] was trying to get away" from him instead of driving home. *Id.* at 62-63. Trooper Hutchinson pulled out of the parking lot so he did not block the exit and then soon after noticed Appellant walking on the road and away from the apartment complex. *Id.* at 61, 65.

Trooper Hutchinson then stopped Appellant, and while speaking with him about the traffic violation and expired registration, the trooper "smell[ed] the odor of an alcoholic beverage [on Appellant's] breath." N.T. Jury trial Vol. I at 65-66. Trooper Hutchinson asked if he had any alcohol, to which Appellant

---

[6] Trooper Hutchinson stated to "run a registration[ plate,]" he uses "a computer [in his patrol vehicle that is] hooked up to a system" that allows him to type in the license plate number and state. N.T. Jury Trial Vol I. at 62. The computer will then produce information about whether the car is stolen, who it is registered to, and in some instances the driver's license information of the owner. *Id.*

responded "approximately three hours prior[,] he drank two beers[.]" *See id.* at 66. During his investigation, the trooper requested assistance from another nearby trooper *via* radio, and Pennsylvania State Troopers Daniel Castellano and Steven Kase responded.[7] *Id.* at 66-67. After Troopers Castellano and Kase arrived, Trooper Hutchinson turned over the investigation to them.[8] *Id.* at 68.

The Commonwealth then presented Trooper Kase, who testified that on the day in question at approximately 10:06 a.m., he heard a request for assistance over radio from Trooper Hutchinson. *See* N.T. Jury trial Vol. I. at 75-76. Trooper Kase responded to the call and drove "[a]pproximately a half mile" down the road where he saw Troopers Castellano and Hutchinson, as well as Appellant. *Id.* at 76-77. Trooper Kase stated Trooper Hutchinson explained Appellant "consumed alcohol during the day" and committed "multiple" traffic violations. *Id.* at 78. Trooper Kase then escorted Appellant back to his car in the apartment complex parking lot. *Id.* While walking, the trooper "detected a strong odor of alcohol emanating from [Appellant's] person" and noticed his eyes were "glassy and bloodshot[.]" *Id.* at 78-79.

Trooper Kase testified that based on his observations, he suspected Appellant was under the influence of alcohol and attempted to administer

_____

[7] Both state troopers' primary patrol area was Lancaster County.

[8] The Commonwealth also admitted video footage of Trooper Hutchinson's interaction with Appellant into evidence. *See* N.T. Jury Trial Vol. I at 69, 103.

three field sobriety tests — horizontal gaze nystagmus (HGN),[9] "[w]alk-and-[t]urn[,]" and "[o]ne-[l]eg [s]tand" tests. N.T. Jury Trial Vol. I. at 79, 82. Trooper Kase stated Appellant did "not [perform] well" on the HGN and walk-and-turns tests, and "refused to perform" the one-leg stand test due to an ankle injury. *Id.* at 82, 88, 91, 93. After Appellant completed two of the three sobriety tests, Trooper Kase concluded Appellant was "impaired to the point of unsafe driving[,]" placed him under arrest, and transported him to the hospital for a blood alcohol content (BAC) test. *See id.* at 95, 101. The results of the test indicated Appellant had a BAC of .152 percent. *Id.* at 101.

Relevant to one of Appellant's claims on appeal, during Trooper Kase's testimony, the Commonwealth presented video footage of the trooper conducting the sobriety tests on Appellant to the jury.[10] *See* N.T. Jury trial Vol. I. at 84. At the start of the video, Trooper Kase stated Appellant's license "was DUI suspended." *Id.* at 86. Counsel objected and requested a mistrial. *Id.* The trial court denied the motion, and instead provided the jury with a curative instruction. *Id.* at 87.

_____

[9] Trooper Kase described that while conducting an HGN test, the officer looks for "a series of [standardized] clues" to indicate intoxication, such as the inability for the subject's eyes to "follow the stimulus" — in the present case, a pen — as the officer "move[s] it back and forth." *See* N.T. Jury Trial Vol. I. at 87-88.

[10] The video footage was not included in the certified record, but this does not impede our review.

Appellant then testified on his own behalf. Appellant stated that on the morning of the incident, he was at the "Vintage Commons Apartments" because he shared an apartment there with his friend and co-worker, "Lew." N.T. Jury Trial Vol. I. at 108, 110-11. Appellant detailed that his name was not on the lease for this apartment, he only goes to the apartment "every two weeks[,]" and he did not know the address of the apartment. *Id.* at 113. He stated that because his license is suspended, Lew would drive Appellant's car to work, and Lew parked the car at the apartment that morning. *See id.* at 111, 115. Appellant explained his car was registered in Philadelphia because he did not "want to live in Lancaster anymore." *Id.* at 112.

Appellant stated "[a]t some point during that morning[,]" he "walked out [of the apartment] to get a beer[,]" but before he was able to purchase any, he was stopped by Trooper Hutchinson. N.T. Jury Trial Vol. I. at 108-09. By the time the trooper stopped him, Appellant stated his vehicle was parked at the apartment for "three to four hours[.]" *Id.* at 109. He then testified that because of his "limited English," he did not understand much of what Trooper Hutchinson said to him. *Id.* at 110. Regarding their conversation, Appellant stated: "[Trooper Hutchinson] mentioned beer, so I . . . told him, yeah, I wanted to get beer. [Trooper Hutchinson] mentioned [a] driver's license. I know my driver's license is suspended[.] I just catch the words and I just give him what I know." *Id.*

During cross-examination, Appellant testified that he did not drive that day. *See* N.T. Jury Trial Vol. I. at 115. However, the Commonwealth

highlighted that during the video footage, Trooper Hutchinson asked Appellant "if [he] parked to avoid him[,]" to which Appellant responded, "no, [he] was dropping the car off for [his] friend[.]" *Id.* Further, in the video, Appellant admitted he saw the trooper when he "passed the truck[.]" *Id.* Appellant explained that he did not "understand [the trooper's] question[s]" and attempted to clarify his statements in the video footage regarding "pass[ing] the truck[.]" *Id.* He stated the following:

> What I'm trying to explain to [Trooper Hutchinson] is if I were passing someone is only when they — you know, like, if I were to be behind a truck that was slow, that is when I would pass it, not that I was doing it. I wasn't driving.

*Id.* at 116.

The next day, the Commonwealth recalled Trooper Kase to present rebuttal evidence. *See* N.T. Jury Trial Vol. II. at 126-128. Trooper Kase stated: (1) he patrolled the area where Appellant was arrested "almost daily[;]" (2) the closest bar to the apartment complex was "approximately" two and one half miles away and was not open at 10:00 a.m.; and (3) the closest "beer store" to the apartments was "about six miles" away and he did not believe it was open at 10:00 a.m. *See id.*

At the conclusion of trial, the jury found Appellant guilty at both counts of DUI. The trial court then found Appellant guilty of the remaining summary offenses, driving an unregistered vehicle, driving while license suspended — related to DUI offense, and careless driving.

On November 2, 2022, the trial court held a sentencing hearing. At the proceeding, the Commonwealth pointed out this was Appellant's fourth DUI offense within the past 10 years. **See** N.T. Sentencing, 11/2/22, at 3. The Commonwealth noted there was a one-year mandatory minimum sentence, and the Pennsylvania Sentencing Guidelines provided a standard sentencing range of 15 to 21 months' incarceration. **Id.** Appellant responded that the sentencing guidelines called for a nine-to-16-month sentence because the three prior DUI's "should not count against [Appellant's] prior record score since they are what enhances" the conviction's grading. **Id.** at 4. The trial court determined it would use Appellant's suggested guideline range. **Id.** The court then imposed a 16 month to seven-year sentence for the DUI — high rate of alcohol — conviction. **Id.** at 6. Appellant's sentence for DUI — general impairment merged for sentencing purposes, and he received no further penalty on the remaining summary offenses. **Id.**

Appellant did not file a post-sentence motion, but instead filed this timely appeal. On December 5, 2022, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Order, 12/5/22. In lieu of a Rule 1925(b) statement, Attorney Kelleher filed a statement of intent to file an **Anders** brief pursuant to Pa.R.A.P. 1925(c)(4). **See** Pa.R.A.P. 1925(c)(4) ("If counsel intends to seek to withdraw in a criminal case[,] counsel shall file of record and serve on the judge a statement of intent to withdraw in lieu of filing a [Rule 1925(b)] Statement."). In light of Attorney Kelleher's statement of intent to file an

***Anders*** brief, the trial court did not file a Rule 1925(a) opinion. ***See*** Statement in Lieu of Memorandum Opinion, 12/28/22.

When, as here, counsel files a petition to withdraw and accompanying ***Anders*** brief, we must first examine the request to withdraw before addressing any of the substantive issues raised on appeal. ***Commonwealth v. Bennett***, 124 A.3d 327, 330 (Pa. Super. 2015). An attorney seeking to withdraw from representation on appeal must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Pursuant to ***Santiago***, counsel must also:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Id.***, *quoting* ***Santiago***, 978 A.2d at 361.

In the present case, the brief and application to withdraw submitted by Attorney Kelleher comply with the requirements of ***Anders*** and ***Santiago***. ***See Cartrette***, 83 A.3d at 1032. Moreover, Counsel has provided this Court with a copy of the letter she sent to Appellant, advising him of his right to

proceed *pro se* or retain private counsel, and to raise any additional claims. *See* Attorney Kelleher's Application for Leave to Withdraw as Counsel, 2/7/23, Appendix A. Appellant did not file a response. Therefore, we proceed to examine the issues identified in the ***Anders*** brief, and then conduct "a full examination of all the proceedings, to decide whether the case is wholly frivolous." ***Commonwealth v. Yorgey***, 188 A.3d 1190, 1196 (Pa. Super. 2018) (*en banc*) (citation omitted). If we agree with Attorney Kelleher's assessment, "[we] may grant [her] request to withdraw and dismiss the appeal[.]" ***Id.*** (citation omitted).

The ***Anders*** brief identifies the following for our review: (1) Appellant's trial counsel was ineffective when he did not "adequately present his case at trial[;]" (2) Appellant's sentence is illegal; and (3) the trial court erred when it denied Appellant's motion for mistrial.[11] ***Anders*** Brief at 9-13.[12]

In his first claim, Appellant alleges trial counsel was ineffective and did not "adequately present his case[.]" ***Anders*** Brief at 9.

---

[11] Attorney Kelleher does not present Appellant's potential claims in a "Question's Presented" section of the ***Anders*** brief, nor does she set forth each argument in question form. *See* Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved . . .). However, Counsel does raise the following issue in the "statement of question presented[:]" "Should appellate counsel be granted leave to withdraw as counsel because any appellate issues in the instant case are frivolous?" ***Anders*** Brief at 5 (some capitalization omitted).

[12] The Commonwealth did not file a responsive brief with this Court.

"[A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." ***Commonwealth v. Grant***, 813 A.2d 726, 738 (Pa. 2002). Our Supreme Court has recognized two very limited exceptions to the general rule: (1) in extraordinary circumstances where claims of trial counsel's ineffectiveness are apparent from the record and immediate consideration best serves the interests of justice and/or; (2) where there is good cause shown and unitary review of the claim is preceded by a waiver of the right to seek review under the Post-Conviction Relief Act (PCRA).[13] ***Commonwealth v. Holmes***, 79 A.3d 562, 563-64 (Pa. 2013). Our Supreme Court also adopted a third exception, which requires "trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review." ***Commonwealth v. Delgros***, 183 A.3d 352, 361 (Pa. 2018).

Attorney Kelleher states in the ***Anders*** brief that Appellant inquired about filing a PCRA petition, and she "instructed him that his appeal would either need to be completed . . . or withdrawn before he could move forward" with collateral review. ***Anders*** Brief at 10. Appellant did not direct Attorney Kelleher to withdraw his appeal. ***Id.***

None of the above-mentioned exceptions apply to the facts before us. Appellant's claim that trial counsel did not present "adequate[ ]" evidence is (1) not apparent from the record or so extraordinary that the interests of

---

[13] 42 Pa.C.S. §§ 9541-9545.

justice require immediate review, and (2) Appellant has not shown good cause to require review or waived his right to file a petition under the PCRA. *See Holmes*, 79 A.3d at 563-64; *Anders* Brief at 9. Additionally, Appellant received a sentence of incarceration, which he is presently serving, and as such, is not statutorily prohibited from seeking collateral relief. *See* 42 Pa.C.S. § 9543(a)(1)(i) (to be eligible for PCRA relief, the petitioner must "plead and prove by a preponderance of the evidence [they have] been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted . . . currently serving a sentence of imprisonment, probation or parole for the crime"); *see also Delgros*, 183 A.3d at 361. Accordingly, we decline to entertain Appellant's ineffectiveness claim on direct appeal and dismiss the issue without prejudice for him to raise on collateral review.

In his second claim, Appellant purportedly raises a challenge to the legality of his sentence. *See Anders* Brief at 10-11. Attorney Kelleher states there was a "dispute" as to the applicable guideline range for Appellant's sentence — with the Commonwealth suggesting the guidelines provide a range of 15-to-21-months and Appellant arguing the guidelines require a nine-to-16-month range. *Id.* at 10.

First, we note that "any misapplication of the Sentencing Guidelines constitutes a challenge to the discretionary aspects of [a] sentence." *Commonwealth v. Sunealitis*, 153 A.3d 414, 421 (Pa. Super. 2016) (citation omitted). Thus, Appellant's argument does not qualify as a claim regarding the legality of his sentence. Instead, it amounts to a challenge to

the discretionary aspects of his sentence as his claim concerns the misapplication of the sentencing guidelines. Appellant did not preserve a discretionary aspects of sentencing argument during his sentencing proceedings or in a post-sentence motion. ***See id.*** at 420 (to preserve a challenge to the discretionary aspects of a sentence, petitioner must, *inter alia*, preserve the claim at sentencing or "in a motion to reconsider and modify sentence"). As such, this claim is waived, and no relief is due.

Moreover, if Appellant did properly preserve this claim, he would not be entitled to any relief. This Court has previously stated:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Clemat***, 218 A.3d 944, 959 (Pa. Super. 2019) (citation omitted). Further, "when imposing sentence, the trial court is granted broad discretion, as it is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." ***Commonwealth v. Mulkin***, 228 A.3d 913, 917 (Pa. Super. 2020). We also note, this Court will vacate a sentence imposed within the sentencing guidelines but the trial court "applied the guidelines erroneously" or where "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781(c)(1)-(2).

Turning to the instant matter, Appellant received a standard range sentence of 16 months to seven years' incarceration for DUI — high rate of alcohol under Subsection 3802(b). His remaining DUI charge merged for sentencing purposes, and he received no further penalty for his summary convictions. The Commonwealth stated at the sentencing hearing that the standard guidelines provided a range of 15 to 21 months' incarceration and there was a mandatory one-year sentence due to his prior DUI convictions. *See* N.T. Sentencing at 3. Appellant argued the standard guideline range was nine to 16 months, and the trial court agreed with him, resolving the dispute in his favor. *Id.* at 3-4.

The Commonwealth was correct that the trial court was required to impose a mandatory minimum sentence of one year incarceration. *See* 75 Pa.C.S. 3804(b)(4)(i) (a defendant who has four or more DUI convictions under Section 3802(b) shall be sentenced to "undergo imprisonment of not less than one year"). Further, Appellant's minimum sentence was within the standard guideline range that he requested during sentencing proceedings — as opposed to the Commonwealth's suggested guideline range — and it did not exceed the statutory maximum. *See* 75 Pa.C.S. § 3803(a)(3) (when an individual commits a violation of Section 3802 and has three or more prior offenses, they commit a felony of the third degree); 18 Pa.C.S. § 1103(3) (a third-degree felony carries a maximum sentence of not more than seven years); *see* N.T. Sentencing at 3-4. Thus, Appellant's sentence imposed the mandatory minimum, and was within the standard guideline range and the

statutory maximum. As such, Appellant has not demonstrated that the trial court abused its discretion, and no relief is due. *See Clemat*, 218 A.3d at 959.

In his third and final argument, Appellant avers he was deprived of a fair trial when the Commonwealth played a video that revealed his license was suspended due to a previous DUI. *See* Anders Brief at 13. He points out that when the Commonwealth played video evidence for the jury, "an officer can be heard saying [Appellant's] license was DUI suspended." *Id.* at 11. As a result, trial counsel moved for a mistrial, but the court denied it and instead instructed the jury to disregard the officer's statement in the video. *See* N.T. Jury Trial Vol. I at 86-87. Appellant avers the trial court erred when it denied his motion for mistrial. *See* Anders Brief at 11-13.

We review a challenge to the denial of a motion for mistrial by the following standard:

> A motion for mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of the motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

*Commonwealth v. Cox*, 231 A.3d 1011, 1018 (Pa. Super. 2020) (citation omitted). Further, it is well established that juries are assumed to follow the trial court's instructions, which "is presumed to be sufficient to cure any

prejudice." ***Commonwealth v. Thornton***, 791 A.2d 1190, 1193 (Pa. Super. 2002) (citations omitted).

At trial, Appellant moved for mistrial after the Commonwealth presented a video to the jury depicting his interaction with Trooper Kase. In the video, trial counsel argued "that video just said the licen[s]e was DUI suspended." N.T. Jury Trial Vol. I at 86. The trial court denied the motion and gave the following curative instruction to the jury:

> Ladies and gentlemen of the jury, you may have heard the trooper explain that [Appellant's] license was suspended, perhaps, for some other reason. I believe he said a DUI-related charge.
>
> I'm directing you to disregard that. So as I indicated to you in my original comments, anything that you heard that I am directing you to disregard, you may not take that into consideration in your deliberations in this case. So whatever that comment was that the trooper made on the tape, I'm directing you to disregard it.

***Id.*** at 87.

We conclude the trial court did not abuse its discretion when it denied Appellant's motion for mistrial. The trooper made a single statement in the video that Appellant's license was suspended related to a DUI. ***See*** N.T. Jury Trial Vol. I at 86. The trial court gave an instruction whereby it directed the jury to disregard the statement twice. ***See id.*** at 87. The jury was presumed to have followed this instruction. ***See Thornton***, 791 A.2d at 1193. Further, this statement does not rise to such a level that this Court must conclude the "unavoidable effect [of the evidence] deprive[d Appellant] of a fair and

impartial trial."[14]    *See Cox*, 231 A.3d 1011, 1018.    Moreover, the Commonwealth presented other independent evidence that Appellant was driving while impaired in the form of Appellant's BAC test result and Troopers Hutchinson and Kase's testimony.  *See* N.T. Jury Trial Vol. I. at 57-58 (Trooper Hutchinson witnessing Appellant commit traffic violations), 65-66 (Trooper Hutchinson smelling alcohol on Appellant's breath), 78-79 (Trooper Kase smelled alcohol emanating from Appellant and noted his eyes were glassy and bloodshot), 88, 91 (Trooper Kase testifying that, on the two sobriety tests he administered, Appellant did not perform well), 95 (Trooper Kase concluded Appellant "was impaired to the point of unsafe driving"), 101 (Appellant's blood test indicated he had a BAC of .152, well above the legal limit).  As such, no relief is due.

Additionally, as required by *Anders*, this Court has independently reviewed the record and concluded there are no non-frivolous issues to be raised on appeal.  *See Yorgey*, 188 A.3d at 1196.  We affirm the judgment of sentence and grant Counsel's petition to withdraw.

Judgment of sentence affirmed.   Petition to withdraw as counsel granted.

---

[14] Notably, during his testimony, Appellant admitted: "I know my driver's license is suspended[.]"  N.T. Jury trial Vol. I at 110.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>09/18/2023</u>