J-S33026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH WALTER HOGG | : | |
| | : | |
| Appellant | : | No. 1100 WDA 2022 |

Appeal from the Judgment of Sentence Entered August 11, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004215-2021

BEFORE: BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                 **FILED: DECEMBER 8, 2023**

Joseph Walter Hogg (Appellant) appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas after his negotiated guilty plea to one count each of attempted homicide, aggravated assault, and burglary, and two counts of recklessly endangering another person (REAP).[1] On appeal, Appellant challenges the discretionary aspects of his sentence, arguing the trial court failed to consider mitigating factors and his rehabilitative needs. We affirm.

The facts underlying Appellant's guilty plea were summarized at the plea hearing as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a), 2501(a), 2702(a)(1), 3502(a)(1)(i), and 2705, respectively.

[O]n or about May 2nd of 2021 at approximately 8:30 p.m. [Pittsburgh police] officers were dispatched to . . . Spring Garden Road in the City of Pittsburgh . . . for a report of shots fired[ at the home of Brenna Richards (Victim).  Appellant,] a former intimate partner of [Victim], came to her residence [and] kicked in her door.  When [Victim] encountered [Appellant, he] had his hands outstretched in front of him holding a firearm.  [V]ictim's two children, ages 6 and 8[,] were present in the home when [Appellant] unlawfully entered.  [V]ictim screamed for the children to get help.  At that point [Appellant] told her to shut up.  [Victim] took a defensive position on the floor, sitting on her backside bringing her knees to her chest, tucking her head down and placing her hands over her eyes.  At that point her children were approximately five feet away . . . directly behind her.

[Appellant] then stood over [Victim] with a firearm still in his hand and from approximately one-and-a half feet away shot her in the head three times.  The bullets entered the left side of her face near her eyes, her temple, and her ear.[2]

After [Appellant] shot [Victim] three times, he fled from the residence[ and] disposed of the firearm along his route to the City of Pittsburgh as he was going to his parents' house.

There were two 911 calls placed[,] one from the neighbor of [Victim,] who rendered aid while police were responding to the scene, and a second 911 call placed by [Appellant,] alerting dispatchers to what he had just done.  [Later that evening, police took Appellant into custody and during an audio recorded interview with investigating officers, Appellant] admit[ted] to the crimes.

[Appellant's] use of a deadly weapon on a vital part of [Victim's] body . . . is evidence of his intent to kill her.  . . .

N.T. Guilty Plea, 4/27/22, at 6-9.

---

[2] At sentencing, Victim testified Appellant shot her four times: thrice in the head and once in the leg.  N.T. Sentencing, 8/11/22, at 12, 14.

On April 27, 2022, Appellant entered a negotiated guilty plea to one count each of attempted homicide, aggravated assault, and burglary, and two counts of REAP.[3] There was no agreement as to a sentence.

On August 11, 2022, the trial court held a sentencing hearing. Victim testified about the lasting impact of the attack on both her and her children, and her permanent injuries to her jaw, hand, and eye, as well as internal injuries she suffered. *See* N.T. Sentencing at 12-14. She also stated Appellant had many "chance[s]" to reconsider his actions — "to stop before he walked to [her] house" or came through the door, "to stop after each bullet," and "to call for help for the children." *Id.* at 13-14. The Commonwealth recommended a guideline range sentence of 10 to 20 years' incarceration plus a term of probation, to be determined within the trial court's discretion. *Id.* at 17.

Appellant exercised his right to allocution, apologized for his actions and "being too ashamed to tell everyone [he] needed help[,]" and stated he was "working every day on [him]self" to be better. N.T. Sentencing at 9-10. Appellant also submitted to the court an extensive sentencing memorandum, which included, *inter alia*: (1) statements of remorse and taking responsibility for his actions; (2) references to his "tumultuous" relationship with Victim; (3) allegations that Victim emotionally and physically "abuse[d]" him and was

---

[3] Appellant was initially charged with two counts of burglary. He pleaded guilty to one count under subsection 3502(a)(1)(i). The Commonwealth withdrew the remaining charge of burglary under subsection 3502(a)(1)(ii).

violent towards him — which resulted in two protection from abuse (PFA) orders against Victim; (4) his own description of the "circumstances" which lead him to shoot Victim; (5) letters from family and friends about his character and his "importance to their community[;]" and (6) his own 13 page statement that he has "demonstrated his ability to change." ***See*** Appellant's Sentencing Memorandum, 8/5/22, at 2-6 (unpaginated).

The trial court reviewed the presentence investigation (PSI) report and recognized Appellant accepted responsibility for his actions. However, it also addressed him as follows:

> You did save us the cost of a trial and you accepted responsibility for this, but at the same time you shot somebody three times in the head. [The Commonwealth] is right, by the grace of God [Victim] is still alive. Plus you hit her in the leg. And the children were right there. You kicked down the door. It is truly a miracle she is still alive.
>
> And while you did take responsibility, the gravity of this offense, and just the cold[ ]heartedness of this that you just kicked the door down and shot her four times.

***See*** N.T. Sentencing at 20.

The trial court sentenced Appellant to: (1) seven to 14 years' incarceration for attempted homicide; (2) a consecutive term of one to two years' incarceration for burglary; and (3) two consecutive terms of two years' probation for the two REAP convictions.[4] His aggregate sentence was thus eight to 16 years' incarceration, to be followed by four years' probation. Each

---

[4] Appellant's conviction of aggravated assault merged with attempted homicide for sentencing purposes.

of Appellant's sentences was within or below the standard guideline ranges.[5]

The court also ordered Appellant to undergo a mental health evaluation and

to follow recommendations. Appellant did not object to his sentence at the

hearing, but he did file a timely post-sentence motion, where he averred his

sentence was excessive based on the facts of the case and his history with

Victim. *See* Appellant's Motion to Reconsider Sentence, 8/16/22, at 2

(unpaginated). The court denied his post-sentence motion and this timely

appeal followed.[6]

Appellant raises the following claim for our review:

> Whether the trial court abused its discretion in fashioning a manifestly unreasonable and unduly harsh aggregate sentence of [eight to] 16 years' incarceration and four years' probation, given the nature of the offense, the length of such imprisonment and probation, and the trial court's failure to consider [Appellant's] character, personal history, and rehabilitative needs, as required by 42 Pa.C.S.A. § 9721(b)?

Appellant's Brief at 5.

---

[5] Appellant had a prior record score of zero. The offense gravity score of attempted homicide is 14, and thus the standard guideline range sentence for this crime was six to 20 years' incarceration. *See* Appellant's Guideline Sentence Form, 7/27/21, at 1. Burglary has an offense gravity score of 10, which provides for a standard guideline range sentence of 22 to 36 months' incarceration and a mitigated range guideline of 10 months' incarceration. *Id.* at 3. REAP has an offense gravity score of 3, and the standard guideline range sentence was restorative sanctions to one-month incarceration. *Id.* at 5-6. Thus, the trial court imposed a standard guideline range sentence for attempted homicide and each of his REAP convictions, and a mitigated range sentence for burglary.

[6] Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

This claim presents a challenge to the discretionary aspects of sentencing. Preliminarily, we note:

> Generally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea.

*Commonwealth v. Morrison*, 173 A.3d 286, 290 (Pa. Super. 2017) (citation omitted). Nevertheless, an appellant who enters an open plea, without an agreement as to sentencing, may challenge the discretionary aspects of their sentence on appeal. *Commonwealth v. Luketic*, 162 A.3d 1149, 1159 (Pa. Super. 2017). However, it is well established that such a claim does not entitle an appellant to "review as of right." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*). Rather,

> [a]n appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902[7] and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.* (citation omitted).

Here, Appellant filed a timely notice of appeal, preserved his claim in a post-sentence motion, and included in his brief a Rule 2119(f) statement. Thus, we next must determine whether Appellant has raised a substantial question. This issue must be reviewed on a case-by-case basis. *See*

---

[7] Amended May 18, 2023.

*Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa. Super. 2015). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* at 338 (citation omitted).

A claim that a sentence is excessive where the sentences are all consecutive and within the guideline range generally does not raise a substantial question. *See Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010). However, this Court has held that "an excessive sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises a substantial question." *Swope*, 123 A.3d at 339 (citations omitted). Further, an assertion that the imposition of a consecutive sentence coupled with the claim that the trial court did not consider a defendant's rehabilitative needs also presents a substantial question for our review. *See Caldwell*, 117 A.3d at 770. In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is excessive; "[r]ather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable." *Swope*, 123 A.3d at 340 (citations omitted).

Here, Appellant avers he raises a substantial question because even though each of his sentences were in the mitigated or standard ranges, the

trial court's application of the sentencing guidelines under the present circumstances was unreasonable. Appellant's Brief at 18. He maintains the trial court failed to consider the following mitigating factors: (1) his "tumultuous relationship" with Victim; (2) his "genuine remorse for his actions[;]" (3) his filing for several PFA orders against Victim before this incident; and (4) "countless letters and testimonials speaking to his good character and value in the community." *Id.* at 19-20. He asserted that in light of these factors, his rehabilitative needs, and the sentencing guidelines, his aggregate sentence was excessive. *See id.* at 21-22.

The Commonwealth argues Appellant did not present a substantial question as he did not claim that the trial court violated the Sentencing Code. Commonwealth Brief at 8. Appellant filed a reply brief, maintaining he did raise a substantial question when he alleged the court "failed to consider mandatory . . . factors under the Sentencing Code." Appellant's Rely Brief at 2.

We conclude Appellant's claim that the trial court imposed an excessive aggregate sentence without considering mitigating factors and his rehabilitative needs has presented a substantial question for our review. *See Swope*, 123 A.3d at 339; *See Caldwell*, 117 A.3d at 770. As such, we continue with our analysis.

We consider the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse

of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Caldwell***, 117 A.3d at 770 (citation omitted). "[W]hen imposing sentence, the trial court is granted broad discretion, as it is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." ***Commonwealth v. Mulkin***, 228 A.3d 913, 917 (Pa. Super. 2020) (citation omitted).

The trial court must consider the factors set out in 42 Pa.C.S. § 9721(b) when imposing a sentence, which includes "the protection of the public, gravity of offense in relation to impact on the victim and community, and rehabilitative needs of the defendant." ***Commonwealth v. Clemat***, 218 A.3d 944, 960 (Pa. Super. 2019) (citation omitted); ***see also*** 42 Pa.C.S. § 9721(b). Additionally, it is well-settled that the decision to impose consecutive or concurrent sentences is within the trial court's sole discretion. ***See*** 42 Pa.C.S. § 9721(a). Additionally, "where the sentencing judge had the benefit of a presentence investigation report . . . it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. ***Commonwealth v. Bankes***, 286 A.3d 1302, 1307 (Pa. Super. 2022) (citation omitted).

Lastly, we note:

[A]lthough [a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence, . . . the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender.

*Commonwealth v. Flowers*, 149 A.3d 867, 876 (Pa. Super. 2016) (citation & quotation marks omitted). "[A] sentencing judge may satisfy requirement of disclosure on the record of his reasons for imposition of a particular sentence without providing a detailed, highly technical statement." *Commonwealth v. Hunzer*, 868 A.2d 498, 514 (Pa. Super. 2005) (citation omitted).

Appellant contends that the trial court abused its discretion when it imposed each of his sentences consecutively, without considering the sentencing factors under section 9721(b), other mitigating factors, and his rehabilitative needs. Appellant's Brief at 23. Appellant also maintains the trial court did not properly include its reasons for the sentence on the record. *See id.* at 24-25. Specifically, he insists that the trial court did not mention his mental health concerns or his rehabilitative needs, and did not consider that he was "highly unlikely to pose a threat to the public" or reoffend. *Id.* at 26-27. Appellant also maintains the trial court's "mischaracterization" of his behavior as "cold[ ]hearted" was "problematic" since the evidence provided at sentencing demonstrated he was "struggling with his mental health" and acted "wildly out of his character." *Id.* at 29-30.

The trial court concluded that after reviewing the PSI report, Appellant's extensive sentencing memorandum, and the relevant factors of the sentencing code, it did not abuse its discretion in imposing his sentence. Trial

- 10 -

Ct. Op., 1/17/23, at 3, 5. Specifically, it stated it considered the following evidence:

> In this case, consideration was given to the relevant factors as required by the Sentencing [C]ode. Initially, it is noted that the gravity of the offense and the impact on [V]ictim was significant. [V]ictim described having permanent jaw pain, internal injuries and damage to her eye and hand. It is also clear that while [Appellant] expressed remorse and accepted responsibility for [shooting Victim], he nonetheless placed significant blame for the shooting on what he repeatedly characterized throughout his written statement as the violent nature of [V]ictim.
>
> In [Appellant's] statement he described in detail what he characterized as a difficult relationship with [V]ictim that he claimed was fueled by [V]ictim's jealousy and intoxication. [Appellant] initially described a good relationship that began prior to November of 2018 when they moved in together, but then deteriorated. However, despite the deterioration of the relationship, [Appellant] willingly continued in the relationship, even traveling to Florida together following the PFA petitions referenced in the Sentencing Memorandum. It is important to note that [Appellant] also describes the turning point in the relationship on April 28, 2021, just days before the shooting, when [V]ictim informed him that that she had been dating someone else since December of 2020 and he, in turn, contacted a woman and initiated a date of his own on May 2, 2021.
>
> It was following phone calls, messages and exchanges between [Appellant] and [V]ictim on May 2[nd] that [Appellant] went to [V]ictim's home, purportedly to retrieve some keys, and kicked in the door, confronted [V]ictim, and ultimately shot her repeatedly in the head. [Appellant] contended that he "didn't realize what happened until I seen blood on her chest."
>
> The therapy records submitted reflect a recognition by [Appellant] of the "toxic" nature of their relationship but also indicate that [Appellant] wanted to "work on my anger" as well as his "anger reaction" to [V]ictim. The fact that the shooting of [V]ictim followed shortly after what appeared to be a disclosure of her relationship with someone else and her apparent interference with his attempts at a new relationship indicate that this shooting was not a spontaneous reaction caused by violence directed at

- 11 -

him by [V]ictim. The Commonwealth noted that [Appellant] left his home and drove, with his gun, to [V]ictim's house, kicked in the door and shot her repeatedly in front of her children. [V]ictim correctly noted that [Appellant] had the opportunity to stop before coming to her house, before kicking in the door and before shooting her repeatedly. She also noted that after shooting her he walked away. The Commonwealth requested a sentence consistent with the guidelines of 10 to 20 years plus a period of probation.

*Id.* at 5-6 (citations to the record omitted & paragraph break added).

The trial court also recognized that Appellant accepted responsibility for the shooting, had immense support from friends and family, did not have a prior record score, and was an "ideal inmate[.]" Trial Ct. Op. at 6. However, after considering the extensive evidence above,

there was little to dispute about the fact and the manner in which [Appellant] shot [V]ictim and there was no evidence that his actions that night were prompted by any imminent threat from [V]ictim. As noted at sentencing, the gravity of the offense and permanent impact of the physical injuries on [V]ictim. It was noted that [Appellant's] conduct which included the "cold[ ]heartedness of this that you [sic] just kicked the door down and shot her four times" could not be minimized.

*Id.* (citations to the record omitted).

We agree with the trial court that it did not abuse its discretion. We recognize, as Appellant argued, that the court did not engage in a detailed recitation of facts before imposing his sentence. *See* Appellant's Brief at 24-27. However, the court was not required to partake in a "lengthy discourse" where the record "as a whole" reflected adequate reasoning for the sentence. *See Flowers*, 149 A.3d at 876; *Hunzer*, 868 A.2d at 514. Here, the record reflected the court had the benefit of a PSI report, and thus we presume it

- 12 -

"was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *See Bankes*, 286 A.3d at 1307. The court also considered the detailed sentencing memorandum from Appellant himself. It then imposed standard and mitigated range sentences for his convictions. It merits mention that the court also imposed a sentence shorter than what the Commonwealth suggested for his conviction of attempted homicide. *See* N.T. Sentencing at 17.

We note that in Appellant's sentencing memorandum, he detailed his version of the events which led to him shooting Victim. As the trial court pointed out in its opinion, there was no indication that Appellant's decision to shoot her was a "spontaneous reaction caused by violence[.]" *See* Trial Ct. Op. at 6. Instead, we agree with the court's determination that Appellant's actions were more akin to a planned event, which he could have stopped at any time. *See id.* at 6. We acknowledge, as the trial court did, that Appellant has mental health needs; however, as he himself admits, his mental health needs do not excuse his chosen course of action — shooting Victim from a foot and a half away three times in the head in front of her young children. *See* Appellant's Sentencing Memorandum at 3; N.T. Sentencing at 21; Trial Ct. Op. at 5-6.

Additionally, the trial court's statement at sentencing did encompass a consideration of mitigating factors, the gravity of the offense, the protection of the public — which includes Victim and her children — and Appellant's

rehabilitative needs. **See** N.T. Sentencing at 20-21 (acknowledging Appellant took responsibility for his actions, shot Victim three times in the head in the presence of her children, and ordered a mental health evaluation). Appellant's disagreement with the level of detail included in this statement or the trial court's decision to impose standard and mitigated range consecutive sentences does not amount to an abuse of discretion. **See Mulkin**, 228 A.3d at 917; **Caldwell**, 117 A.3d at 770; **see also** 42 Pa.C.S. § 9721(a). As such, we do not disturb the trial court's ruling on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/8/2023