J-S06023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEWALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| UNIQUE LANE | : | |
| | : No. 879 WDA 2024 | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered February 22, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000421-2022

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED: May 9, 2025**

Unique Lane ("Lane") appeals from the judgment of sentence imposed following her guilty plea to murder of the third degree.[1]  Additionally, Lane's court-appointed counsel, Charles R. Pass III, Esquire ("Attorney Pass"), has filed an application to withdraw and accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967).  We grant Attorney Pass' application and affirm the judgment of sentence.

At the guilty plea hearing, the Commonwealth provided the following factual summary.  On October 3, 2021, Lane shot and killed her girlfriend, Kia Reynolds, who was sitting the driver's seat of her locked vehicle.  The evidence established that Lane followed Reynolds from a residence and shot Reynolds

---

[1] ***See*** 18 Pa.C.S.A. 2502(c).

through the passenger side window of her vehicle, striking her in the head. When police arrived, Reynolds' body was lying next to the driver's side door of the vehicle, suggesting that the driver's side window had been smashed with a rock to unlock the door and remove the body from the vehicle. Reynolds' family informed police that the two women had a tumultuous relationship marked by incidents of violence, and that Reynolds was attempting to end the relationship at the time of the murder. After the murder, police recovered a Valentine's Day card from Reynold's residence which was written by Lane to Reynolds wherein Lane wrote: "To bullets do us part." Trial Court Opinion, 11/13/24, at 4.

The Commonwealth charged Lane with one count of criminal homicide. In exchange for Lane's plea, the Commonwealth agreed to amend the charge to murder in the third degree, with no agreement as to the sentence. The trial court deferred sentencing for the preparation of presentence investigation ("PSI") report. Lane submitted an expert mitigation report prepared by Vickie Piontkowski, a licensed clinical social worker. At the sentencing hearing, Piontkowski testified that Lane had been exposed to violence from a young age and was "at least the third generation in her family to experience intimate partner violence," which caused "mental health symptoms related to anxiety and depression." N.T., 2/22/23, at 9. The trial court reviewed fourteen victim impact statements submitted by the Commonwealth, including statements from Reynold's father and sisters. The trial court also heard testimony from

Reynolds' three daughters and her mother, who testified as to the significant impact the murder has had on every aspect of their lives. Lane exercised her right to allocution, accepted full responsibility for the murder, and apologized to Reynold's family. At the conclusion of the sentencing hearing, the trial court imposed a standard range sentence of seventeen to thirty-four years of incarceration.[2] In so doing, the court stated:

> I did read all [fourteen] statements, the father's in particular, the fact that it took him six drafts to compose a letter for me. He mentioned he was getting some help at The Caring Place to deal with his loss. The sisters, no matter what happens, they are not going to see their sister again and daughter, losing their mother. It's awful. It is just awful. I don't know if this helps in any way, but you do have some closure and you didn't have to go through a trial. There is nothing worse than going through a homicide trial. It even exacerbates the situation. Again, like I said, there is nothing I can do to make your life whole.
>
> . . . Ms. Lane, I don't know how you're going to live with yourself for what you did because there was no excuse for this. It's just awful.
>
> Now, since you saved us the ordeal of going through a trial and you took responsibility, I'm going to go close to the max but not the max, and based on some of the mitigation factors there were, you did take responsibility, I'm going to sentence you to a period of not less than [seventeen] years and not more than [thirty-four] years in the state prison. You are to have no contact with any of the family members in this matter. While you're there I'm going to have you undergo a mental health evaluation and treatment.

_____

[2] The parties agreed that Lane had a prior record score of one and that the enhancement for use of a deadly weapon applied. Under the deadly weapon enhancement/used matrix in effect at that time, the standard range guidelines for murder of the third degree called for a minimum sentence of eight and one-half to twenty years. The maximum punishment for murder in the third degree is forty years in prison. *See* 18 Pa.C.S.A. § 1102(d).

N.T., 2/22/23, at 23-24.

Lane did not file a post-sentence motion or a direct appeal. However, she subsequently filed a *pro se* petition for relief under the Post Conviction Relief Act ("PCRA"), and the PCRA court appointed Attorney Pass as counsel, who filed an amended petition seeking reinstatement of Lane's post-sentence and appeal rights. The PCRA court granted the requested relief. Lane then filed a post-sentence motion for reconsideration of her sentence which the trial court denied.[3] Lane then filed a timely notice of appeal, and both she and the trial court complied with Pa.R.A.P. 1925. In this Court, Attorney Pass has filed an application to withdraw and an **Anders** brief. Lane did not respond to the application to withdraw or the **Anders** brief.

Before we may address the merits of the issue raised in the **Anders** brief, we must first assess the petition to withdraw from representation to determine whether it meets certain procedural requirements. **See**

_____

[3] In its opinion, the trial court indicated that it entered its order denying the post-sentence motion on July 1, 2024. **See** Trial Court Opinion, 11/13/24, at 1. Attorney Pass indicated in the **Anders** Brief that the motion was denied on July 10, 2024. **See Anders** Brief at 5. However, the docket bears no entry on those dates. Instead, the order denying the post-sentence motion was not entered on the docket until July 17, 2024, after Lane had filed her notice of appeal on July 12, 2024. Nonetheless, we treat the notice of appeal as having been filed after the order denying the post-sentence motion was entered on the docket. **See** Pa.R.A.P. 905(a)(5) (providing that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof").

*Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). An *Anders* brief that accompanies a request to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Counsel must also provide a copy of the *Anders* brief to the client, and a letter that advises the client of the right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Orellana*, 86 A.3d 877, 880 (Pa. Super. 2014) (citation omitted). If counsel has satisfied these requirements, this Court will then conduct "a full examination" of the record "to decide whether the case is wholly frivolous." *Commonwealth v. Dempster*, 187 A.3d 266, 271 (Pa. Super. 2018) (*en banc*) (*quoting Anders*, 386 U.S. at 744).

Here, in the *Anders* brief, Attorney Pass provided a procedural and factual history of the case with citations to the record, discussed the issue arguably supporting the appeal, and explained why he concluded the issue was frivolous. *See Anders* Brief at 4-21. Attorney Pass also mailed a copy of the *Anders* brief to Lane and in his cover letter advised her that she could

raise any additional issues before this Court *pro se* or with privately retained counsel. ***See*** Application to Withdraw, 12/5/24, Exhibit A. As Attorney Pass has substantially complied with the requirements of ***Anders*** and ***Santiago***, we will conduct an independent review to determine whether the appeal is, in fact, wholly frivolous.

In the ***Anders*** brief, Attorney Pass identifies the following issue for our review:

> Whether the [trial court] abused its discretion and acted inconsistently with the fundamental norms of the sentencing process by focusing on the seriousness of the offense to the exclusion of the other factors under 42 Pa.C.S.[A.] §§ 9721(b) and 9725 and—while acknowledging the general circumstance that [Lane], by the act of pleading guilty, "saved us the ordeal of going through a trial and . . . took responsibility, I'm going to go close to the max but not the max, and based on some of the mitigation factors there were, you did take responsibility"—referenced victim impact statements/testimony and emphasized the senseless inexcusable nature of the killing and—while ordering mental health evaluation and treatment during incarceration—did not (adequately) state reasons on the record for the sentence in light of the character of [Lane], the need of such a lengthy sentence to protect the public, why a lesser sentence of incarceration would depreciate the seriousness of [Lane]'s crime, and where the maliciousness involved here was much less than in the ordinary, usual or run-of-the-mill third-degree murder case where only one shot was fired, no other crime was committed/charged, where mental illness, longstanding exposure to violence from a young age, and/or other conditions were involved which affected the *mens rea* in the commission of the offense?

***Anders*** Brief at 3 (unnecessary capitalization omitted).

This issue presents a challenge to the discretionary aspects of Lane's sentence from which there is no automatic right to appeal. ***See***

*Commonwealth v. Akhmedov*, 216 A.3d 307, 328 (Pa. Super. 2019) (*en banc*).[4]  Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by:

> (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[A.] § 9781(b).

*Id*. at 328 (citation omitted).  Furthermore, our determination as to whether the appellant has raised a substantial question is limited to our review of the Rule 2119(f) statement.  *See Commonwealth v. Mouzon*, 812 A.2d 617, 627 (Pa. 2002) (holding that a substantial question exists only where the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set

---

[4] As explained above, Lane entered a guilty plea in this matter.  When a defendant enters a guilty plea, the defendant generally waives the right to challenge on appeal all non-jurisdictional defects except the legality of the sentence and the validity of the plea.  *See Commonwealth v. Pantalion*, 957 A.2d 1267, 1271 (Pa. Super. 2008) (citation omitted).  However, because the plea agreement did not call for a specific sentence, and the parties left the sentence to the trial court's discretion, Lane retained the right to challenge the discretionary aspects of her sentence on appeal.  *See Commonwealth v. Heaster*, 171 A.3d 268, 271 (Pa. Super. 2017) (concluding that appellant could challenge the discretionary aspects of his sentence on appeal after entering a plea that negotiated a particular aspect of the sentence but did not include a sentencing agreement).

forth in the sentencing code or a particular fundamental norm underlying the sentencing process).

Here, the record demonstrates that Lane preserved her discretionary sentencing claim in a post-sentence motion and, upon the denial of that motion, filed a timely notice of appeal. Attorney Pass included a Rule 2119(f) statement in the **Anders** brief, setting forth the reasons for challenging the discretionary aspects of Lane's sentence. Thus, as Lane has met the technical requirements for preserving her discretionary sentencing claim, we will review the Rulle 2119(f) statement to determine whether she has raised a substantial question for our review.

In the Rule 2119(f) statement, Attorney Pass avers that the trial court focused on the severity of the offense, imposed an excessive sentence which was not individualized, and failed to comply with 42 Pa.C.S.A. §§ 9721(b) and 9725. We conclude that this allegation presents a substantial question for our review. **See Commonwealth v. Bricker**, 41 A.3d 872, 875 (Pa. Super. 2012) (holding that an averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question). Accordingly, we will proceed to consider the merits of the discretionary sentencing claim.

Our standard of review of a challenge to the discretionary aspects of a sentence is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In [the context of sentencing], an abuse of discretion is not shown merely by an error of judgment. Rather appellant must establish by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019) (citation omitted).

When the court sentences a defendant to total confinement, it must fashion a sentence "that is consistent with . . . the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). The court shall also consider any guidelines for sentencing. *See id*. Additionally, the court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, the court is of the opinion that the total confinement of the defendant is necessary because a lesser sentence will depreciate the seriousness of the crime of the defendant. *See* 42 Pa.C.S.A. § 9725(3).

"When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Ventura*, 975 A.2d 1128, 1134 (Pa. Super. 2009). "We cannot re-weigh the sentencing

factors and impose our judgment in the place of the sentencing court." ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa. Super. 2009).

When the sentencing court imposes a sentence within the sentencing guidelines, this Court must affirm the sentence imposed unless the case involves circumstances where the application of the guidelines would be clearly unreasonable. ***See*** 42 Pa.C.S.A. § 9781(c)(2), (3). Further, where the sentencing court had the benefit of a PSI report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. ***See Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

In the ***Anders*** brief, Attorney Pass describes the discretionary sentencing claim that Lane wished to raise. Attorney Pass explains that during the sentencing hearing, the trial court referenced the existence of unidentified mitigating factors, but the record is unclear to what extent those supplemental mitigation factors factored into the sentence imposed. Attorney Pass acknowledges that the court ordered a mental health evaluation and treatment as part of the sentence, but notes that the record doesn't reveal whether Lane's mental health conditions were considered with respect to the length of the term of incarceration. Attorney Pass points out that Lane frequently experienced violence in her family and the neighborhoods in which she grew up, resulting in depression and anxiety. He observes that, given Lane's age at the time of the murder (twenty-three years old) and her inability

to establish an effective coping mechanism, continued mental health treatment was warranted. Attorney Pass additionally points out that Lane had no prior record of violence, and the offense in this case was directed against a paramour which would be unlikely to recur against another person after an extended period of treatment.

Nonetheless, Attorney Pass indicates his belief that Lane's discretionary sentencing challenge is frivolous. Initially, he points out that the trial court was undoubtedly aware of the gravity of the offense as it relates to the impact on the life of the victim and on the community, as it involved a sudden and unexpected loss of life for which great pain and grief will continue to be experienced by the victim's family and friends. Attorney Pass further indicates that the trial court, in recognizing that Lane accepted responsibility by pleading guilty and sparing the victim's family the ordeal of a trial, decided to impose a sentence of incarceration close to, but below, the statutory maximum penalty. Attorney Pass notes that, because the standard range of the sentencing guidelines called for a minimum sentence of eight and one-half to 20 years in prison, a sentence of seventeen to thirty-four years for third-degree murder may seem high where the prior record score is one. However, Attorney Pass asserts that the factual summary underlying Lane's plea would support a conviction for first-degree murder. With that in mind, he argues that imposing a minimum sentence of incarceration three years under the top

of the standard range of the guidelines and a maximum sentence six years below the statutory maximum is not clearly unreasonable or excessive.

As far as an individualized sentence, Attorney Pass submits that the sentencing court had substantial evidence regarding Lane's character and rehabilitative needs. Attorney Pass maintains that "[i]t is foolhardy to presume the sentencing court did not consider the evidence in front of it and referenced by the parties based upon the level of explicit reference made thereto by that court." *Anders* Brief at 20-21. Accordingly, Attorney Pass asserts that there is no basis in law or fact to support a claim that the trial court abused its discretion when imposing Lane's sentence, and her discretionary sentencing claim is frivolous.

The trial court considered Lane's discretionary sentencing issue and determined that it lacked merit. The court reasoned:

> [Lane] specifically refers to the lack of reference as to why a lesser sentence of incarceration would depreciate the seriousness of the crime. In this case, the seriousness of the crime is self-evident in the taking of the life of a 39-year-old woman with three daughters and extended family whose testimony regarding the impact of the murder is of record. In addition, [Lane] contends that the maliciousness of the shooting, which she contends was less than the ordinary, usual or run of the mill third-degree murder because only one shot was fired and no other crime was committed, is a relevant factor that should have been addressed. This argument is misplaced. Clearly the summary of the evidence, though not specifically acknowledged by [Lane], established that [she] followed the victim out of the home and shot the victim while she was seated in her car, clearly indicating that the victim was attempting to leave the scene.
>
> In addition, while there were mitigating factors which were specifically acknowledged, in [Lane's] personal history consisting

of exposure to violence as a child and in her history with the victim, there is no strong evidence that indicates that the shooting that day was a product of that history. The summary of the evidence was that "on or around the time of her murder[,] Kia Reynolds was attempting to end the relationship with [Lane]." In addition, the summary of the evidence indicates that [Lane] had written a "Valentine's Day card" to [Reynolds] stating, "[t]o bullets do us part." These facts were not disputed.

In addition, it is noted that while the mitigation expert testified extensively regarding [Lane's] history of exposure to violence, intimate partner violence and "hot cognition" as influencing her conduct, her testimony and report fail to address how these factors lead to [Lane] shooting [Reynolds] as she sat in her car, leaving the scene, and why [Lane] elected to shoot Reynolds, rather than protect her from possibly driving drunk, as she claimed was her motive in following her from the home after [Lane] was allegedly attacked.

* * * *

In this case, the record as a whole, consisting of the [PSI] report, which was substantially unchallenged; the expert mitigation testimony and her report; the victim impact statements and testimony; the circumstances of the shooting; and, [Lane's] acceptance of responsibility and expression of remorse, were all considered in arriving at a sentence that was less that the maximum sentence. Accordingly, there was no error or abuse. of discretion in the sentence procedure or the sentence imposed.

Trial Court Opinion, 11/13/24, at 8-9 (citation and unnecessary capitalization omitted, paragraph formatting added).

Based upon our review, we discern no abuse of discretion by the trial court in imposing sentence. Because Lane's sentence falls within the standard range of the sentencing guidelines, we must affirm unless the case involves circumstances where the application of the sentencing guidelines would be clearly unreasonable. *See* 42 Pa.C.S.A. § 9781(c)(2). On the record before

us, we find no circumstances which would render the application of the guidelines clearly unreasonable. The Commonwealth's factual presentation at the plea indicated that Reynolds was attempting to end the relationship with Lane. On the date of the murder, Lane followed Reynolds out of the home, then shot her in the head through the passenger side door window while Reynolds was attempting to leave the area in her locked vehicle.

Moreover, because the sentencing court had the benefit of a PSI report, we can assume the sentencing court was aware of relevant information regarding Lane's character and weighed those considerations along with mitigating statutory factors when fashioning her sentence. Furthermore, the trial court specifically noted that it considered, *inter alia*, the PSI report, the expert mitigation testimony and expert report, the victim impact statements and testimony, the circumstances of the shooting, Lane's acceptance of responsibility, and her expression of remorse. *See* Trial Court Opinion, 11/13/24, at 9. Additionally, the trial court clearly considered Lane's mental health needs, as it ordered her to undergo a mental health evaluation and to receive treatment. *See* N.T., 2/22/23, at 23-24. Thus, on the record before us, we conclude that Lane's discretionary sentencing issue is, in fact, wholly frivolous.

We have also conducted a full examination of the proceedings and conclude that there are no additional non-frivolous issues to be raised on appeal. In particular, we find no non-frivolous issues regarding the legality of

the sentence imposed or the validity of Lane's guilty plea.  Accordingly, we grant counsel's application to withdraw, and affirm the judgment of sentence.

Application to withdraw granted.  Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/09/2025